[No. 1966]

ROBINSON MINING COMPANY, RESPONDENT, *v.* RICHARD A. RIEPE, HENRY M. FULMER, AND ROY T. IVES, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF FULMER & IVES, AND E. W. HULSE, DEFENDANTS; BERTHA IVES, APPELLANT.

[161 Pac. 304]

1. TROVER AND CONVERSION—TRANSFERRING STOCK—REFUSAL—LIABILITY.

Where a corporation's refusal to issue new stock certificates in smaller denominations for old certificates presented by a shareholder for that purpose is based upon its wrongful assertion of ownership of the stock, the corporation is liable to the shareholder for conversion of the stock.

APPEAL from Fourth Judicial District Court, White Pine County; *George S. Brown,* Judge.

Action by the Robinson Mining Company against Richard A. Riepe and others. From judgment against defendant Bertha Ives on her counterclaim, she appeals. **Reversed and remanded.**

*McElroy & Billings* and *Chandler & Quayle,* for Appellant:

Respondent converted appellant's stock, because it asserted right and title to it in defiance of her right, and because it refused to cut it up into smaller denominations when such refusal clearly interfered with her right to dispose of the same.

A conversion is "any distinct act of dominion wrongfully exerted over one's property in denial of his right or inconsistent with it. * * * The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law conversion, be it for his own or another person's use." (Cooley on Torts, 3d ed. vol. 2, p. 859; Webb's Pollock on Torts, 2d ed. p. 435; *Hollins* v. *Fowler,* L. R. 7 H. L. 766; *University* v. *State National Bank,* 3 S. E. 359; *Coleman* v. *O'Neill,* 1 N. W. 848; *Richardson* v. *Longmont S. & D. Co.,* 76 Pac. 546; *Williams* v. *Smith,* 25 Atl. 1122; *Herrick* v. *Humphrey H. Co.,* 103 N. W. 685; *Bristol* v. *Burt,* 7 Johns. 254; *Gillett* v. *Roberts,* 57 N. Y. 28; *Cinnah* v. *Hale,* 23 Wend. 462.)

A certificate of stock is the evidence and written representation of a shareholder's title and right to a share in the net proceeds of all the property of the corporation. (*Gibbons* v. *Mahon,* 136 U. S. 549, 34 L. Ed. 525; *Barstow* v. *Savage M. Co.,* 64 Cal. 388, 1 Pac. 349; *Craig* v. *Hesperia L. & W. Co.,* 45 Pac. 349; *Am. P. I. S. Co.* v. *State B. of S.,* 59 N. J. L. 389, 29 Atl. 160; *Heller* v. *National Marine Bank,* 89 Md. 602, 43 Atl. 800; *Merritt* v. *American S. B. Co.,* 79 Fed. 228.)

A share of stock, evidenced by the certificate of stock, denotes a mere right to a thing not in possession. The

ownership of a "share," when evidenced by a certificate, gives the owner a beneficial interest which enables him to participate in the management and share in the profits of the corporation. To be possessed of a share is to be invested with the rights which constitute it. It is quite evident that this cannot be accomplished but by actual transfer or by operation of law. (*Storrow* v. *Texas C. C. M. & A.*, 87 Fed. 612, 615; *Clow* v. *Redman*, 6 Idaho, 568, 57 Pac. 437, 439; *Western U. T. Co.* v. *Poe*, 61 Fed. 449, 456.)

The refusal of a corporation, without right, to transfer stock on the demand of the stockholder constitutes a conversion. (*Kimball* v. *Union Water Co.*, 44 Cal. 173; *Payne* v. *Elliott*, 54 Cal. 339; *Fromm* v. *Mining Company*, 61 Cal. 629; *Ralston* v. *Bank of California*, 112 Cal. 213, 44 Pac. 476, 477; *Craig* v. *Hesperia, supra; Continental Co.* v. *Bliley*, 46 Pac. 633; *Schell* v. *Alston M. Co.*, 149 Fed. 439; *Humphrey* v. *Minn. Clay Co.*, 103 N. W. 338; *Herrick* v. *Humphrey Hardware Co., supra; McAllister* v. *Kuhn*, 96 U. S. 87, 24 L. Ed. 615.)

A demand need not be made in a case where the circumstances evidence that a demand would be useless and of no avail; and particularly so when the pleadings admit the exercise of dominion over the property and make claim of title. (*Hand* v. *Soodeletti*, 61 Pac. 373; *Perkins* v. *Barnes*, 3 Nev. 557; *Daggett* v. *Gray*, 42 Pac. 568; *Whitman* v. *Tritle*, 4 Nev. 494; *Ward* v. *Carson*, 13 Nev. 44; *Oakley* v. *Randolph*, 39 Pac. 698; *Becker* v. *Fergenbaum*, 45 Pac. 836; *People* v. *Van Ness*, 21 Pac. 554; *Davis* v. *Wiwona*, 52 Pac. 486; *Raper* v. *Harrison*, 15 Pac. 219; *Rosenau* v. *Syring*, 35 Pac. 844.)

Appellant could have more readily disposed of her shares in smaller denominations. The request for the cutting up of the shares into smaller denominations was within reason. The refusal of respondent to so cut up the stock clearly impeded and interfered with the opportunity to sell the stock. Nothing in the law is regarded as a greater interference with a property right than an obstacle to its alienation, and all rules of limitation imposed upon the right to freely dispose of property

have, from time immemorial, been frowned upon, as against public policy. The first test of an absolute or fee-simple estate in property is an untrammeled right to alienate or dispose of it. A conditional or fee-tail estate could not be alienated. (*Schell* v. *Mfg. Co.*, 149 Fed. 439.)

*Samuel W. Belford*, for Respondent:

The action of conversion arises when the corporation refuses to transfer stock upon its books to a person entitled to such transfer. The present is not such a case. It is not pretended that the corporation refused to transfer stock to a proper transferee. The only dereliction charged against the respondent was its refusal to issue additional certificates of stock upon demand of a stockholder who already possessed this evidence of his title. Where a person acquires stock in a corporation, such person is entitled to receive from the corporation stock certificates which evidence the ownership of such person of a definite number of shares of stock. If the corporation refuse to furnish such certificates, the person entitled to them has a remedy in conversion or for damages resulting from such refusal. In this case, respondent discharged its liability to the stockholder by furnishing a certificate of title by the issuance of stock certificates to the owner of the shares of stock. Appellant's claim is for additional certificates of smaller denomination.

In order to give rise to a cause of action against respondent for its refusal to issue additional certificates of stock, it was necessary for appellant to prove the right to them, and to prove actual damage by reason of the failure of the respondent to provide such certificates of stock as appellant demanded. The conditions were not complied with, and consequently the judgment of the lower court should be affirmed.

By the Court, COLEMAN, J.:

This is the second appeal taken in this case, the former appeal having been taken by plaintiff: *Robinson Mining*

*Co.* v. *Riepe*, 37 Nev. 27, 138 Pac. 910. This appeal is taken by defendant Bertha Ives, from a judgment rendered against her on her counterclaim. The appeal is upon the judgment roll, and it is asserted that the conclusions of law as made by the trial court are contrary to the facts as found. The court found as follows:

"That on the 21st day of June, 1907, said defendant Bertha Ives was the owner and entitled to the possession of 27,500 shares of the capital stock of the said plaintiff company, the value of which was then the sum of $11,000, and not the sum of $82,500 as alleged in said counterclaim, and was in possession of two certificates representing said 27,500 shares of said capital stock, one of which was for 25,000 shares and the other was for 2,500 shares of said capital stock, being the same shares of stock specified in paragraph 6 of plaintiff's complaint. That on said 21st day of June, 1907, said defendant Bertha Ives presented said certificate to said corporation at its office in Ely, White Pine County, Nevada, and demanded that said corporation issue to her new certificates in smaller denominations representing a less number of shares each than the said original certificates in lieu of said original certificates for 27,500 shares, which said old certificates she then and there tendered to said corporation for cancelation upon the issuance of said new certificates. That said corporation then and there refused, failed and declined to issue such or any new certificates and as reason for and part of said refusal, failure, and declination wrongfully asserted title in itself to the whole of said stock, and denied that counterclaimant, Bertha Ives, had any title or interest therein whatsoever. That at that time shares of stock of the plaintiff company represented by certificates of smaller denominations were much more readily salable in the Ely district than shares represented by certificates as large as those so held by the defendant Bertha Ives and by her so presented for cancelation as aforesaid. But it is not true, as alleged in said counterclaim, that said plaintiff company did then or there, by reason of said facts or otherwise, wrongfully, unlawfully, maliciously, or

otherwise, or at all, take or convert the said 27,500 or any shares of stock to its own or any use, or to the damage of said defendant Bertha Ives, or any one else, in the sum of $82,500 or any other sum."

It is the contention of appellant that the facts found by the court show a conversion by the respondent of the stock owned by appellant. Counsel for respondent concedes in his brief that:

"The action of conversion arises when the corporation refuses to transfer stock upon its books to a person entitled to such transfer."

The authorities sustain this rule: *Kimball* v. *Union Water Co.*, 44 Cal. 173, 13 Am. Rep. 157; *Ralston* v. *Bank of California*, 112 Cal. 213, 44 Pac. 476; *Humphreys* v. *Minn. Clay Co.*, 94 Minn. 469, 103 N.W. 338; *Herrick* v. *Humphrey H. Co.*, 73 Neb. 809, 103 N. W. 685, 119 Am. St. Rep. 917, 11 Ann. Cas. 201. But it is contended that this case does not fall within this rule, since appellant merely sought to have her stock certificates canceled and new certificates, of smaller denominations aggregating 27,500 shares, issued to her in lieu thereof. The only case that we know of in which an allusion is made to the right to cut up a stock certificate is that of *Schell* v. *Alston Mfg. Co.* (C. C.) 149 Fed. 439. To our mind, the case at bar does not turn upon the right of appellant to have her stock certificate cut up, but upon the reason given by respondent for not doing so. When appellant presented her certificate and asked that new certificates be issued therefor, the refusal to do so was not based upon the ground that a stockholder of the company could not, as a legal right, demand that his stock certificate be cut up, but upon the ground that the respondent company owned the stock in question.

Hence it seems to us that the question of the legal right of appellant to demand that her two certificates for 27,500 shares of stock be canceled, and several certificates for a small number of shares, but all aggregating the 27,500 shares owned by her, is out of the case. We

think the logic of the rule laid down by Cook with reference to a refusal of a company to transfer stock is applicable to this situation.   He says:

"When the corporation refuses to allow a registry for reasons other than those connected with the mere formalities of registry, or for reasons not given to the applicant, it waives the right to insist on them, and cannot afterwards claim that the appellant did not conform to such technicalities." (Cook, Stock and Stockholders, sec. 383; *Richardson* v. *Longmont S. & D. Co.*, 19 Colo. App. 483, 76 Pac. 546.)

In the case at bar the respondent refused to cut up the appellant's stock certificates for reasons other than those connected with the mere formality of cutting them up.

If applicant, after the refusal of the respondent to cut up the certificates, had obtained purchasers for the stock on condition that she would have it transferred to them, and the company had then refused to make the transfer for the reason that it asserted ownership, it is conceded by counsel for respondent that it would have been guilty of a conversion of the stock.

We believe that it is a well-recognized rule that the law does not require the doing of a vain thing.   Appellant knew that respondent claimed to own the stock, and for that reason would not transfer it.   Why, then, should she be compelled to do the vain thing of obtaining purchasers for the stock, knowing that she could not deliver it because respondent claimed to own it?   In fact, how could appellant, in good faith, make a sale of the stock while respondent was asserting ownership of it?   Suppose she had offered it for sale, and the person to whom she had offered it had said:

"The company claims to own this stock.   You have no title to it, and no right to sell it.   At best, if I buy it, I buy a lawsuit; therefore I will have nothing to do with it."

Was it necessary that respondent go to useless trouble

to find a purchaser, when she knew that it would avail nothing?

Now, it seems to us that the question for us to determine is this: Did respondent violate any right of appellant? To our mind, it clearly did. Respondent not only declined to cut up the stock certificates for the reason that it claimed to own the stock, but its defense in the trial court to appellant's counterclaim was based upon the ground · that it was the owner of the stock. Lord Blackburn, in *Hollins* v. *Fowler*, decided by the House of Lords (Law Journal Reports 1875, vol. 44 [N. S.] p. 169), in determining whether certain acts constituted a conversion, said:

"I own that it is not always easy to say what does and what does not amount to a conversion. * * * It is generally laid down that any act which is an interference with the dominion and right of property of the plaintiff is a conversion, but this requires some qualification. From the nature of the action, as explained by Lord Mansfield, it follows that it must be an interference with the property which would not, as against the true owner, be justified, or at least excused, in one who came lawfully into possession of the goods. And in considering whether the act is excused against the true owner it often becomes important to know whether the person doing what is charged as a conversion had notice of the plaintiff's title.

"There are some acts which from their nature are necessarily a conversion, whether there was notice of the plaintiff's title or not. There are others which, if done in a *bona fide* ignorance of the plaintiff's title, are excused, though, if done in disregard of a title of which there was notice, they would be a conversion. And this, I think, is borne out by the decided cases. Thus a demand and refusal is always evidence of a conversion. If the refusal is in disregard of the plaintiff's title, and for the purpose of claiming the goods either for the defendant or a third person, it is a conversion."

See, also, Pollock on Torts (8th ed.) pp. 357, 358.

It appears to us that the rule laid down by Lord Blackburn is of peculiar and striking application to the

case at bar. The trial court found that the respondent refused to comply with appellant's request, for the reason that it claimed to own the stock. The court also found that respondent's claim of ownership was without legal right. Appellant was helpless. An attempt by her to sell the stock in small quantities, or at all, would have been in vain. Her dominion over the stock was absolutely terminated by the assertion of ownership by the company and a denial, of the ownership of appellant.

Another highly respected court uses the following language:

"In *McCombie* v. *Davis*, 6 East, 540, Lord Ellenborough said: 'According to Lord Holt, in *Baldwin* v. *Cole*, 6 Mod. 212, the very assuming to one's self the property and right of disposing of another man's goods is a conversion; and certainly a man is guilty of a conversion who takes my property by assignment from another, who has no authority to dispose of it.'" (*Gilmore* v. *Newton*, 6 Allen Mass. 171, 85 Am. Dec. 749.)

Again we quote:

"In *Glaze* v. *McMillion*, 7 Port. (Ala.) 279, 281, Golthwaite, J., said: 'It is believed that all conversions may be divided into four distinct classes: (1) By a wrongful taking; (2) by an alleged assumption of ownership; (3) by an illegal user or misuser; and (4) by a wrongful detention. In the three first named classes, there is no necessity for a demand and refusal, as the evidence arising from the acts of the defendant, is sufficient to prove the conversion.'" (*Strauss* v. *Schwab*, 104 Ala. 672, 16 South. 692.)

"It is enough that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it. No manual taking, on the defendant's part, is necessary." (*Pease et al.* v. *Smith et al.*, 61 N. Y. 481.)

It will be seen from the last three quotations that those courts go even further than did Lord Blackburn, and hold that no action is necessary on the part of the owner to make liable one who wrongfully assumes to own property,

and in pursuance of such claim exercises exclusive domination over it, as in the case at bar. Such a statement of the law may seem exaggerated in a case where a horse, cow, or other personal property which is capable of being recovered in an action of replevin is involved; but in a case where the property is intangible, as in this case, and where a *mandamus* will not lie to compel the transfer of stock (*State* v. *Jumbo Ex. M. Co.*, 30 Nev. 198, 94 Pac. 74, 133 Am. St. Rep. 715, 16 Ann. Cas. 896; *Turley* v. *Thomas*, 31 Nev. 181, 101 Pac. 568, 135 Am. St. Rep. 667), the full force of the rule thus announced can be fully appreciated. Since replevin is not available, and since our courts hold that *mandamus* will not lie to compel a transfer of stock, what recourse would appellant have, if not to an action for conversion? None that we know of. It seems to us that in the very nature of things appellant, and others similarly situated, are at the mercy of corporations unless conduct such as respondent was guilty of is held to be a conversion.

We are of the opinion that the judgment of the trial court should be reversed, and that judgment should be entered in favor of appellant and against respondent in the sum of $11,000, the amount found by the court to have been the value of the stock at the time of the conversion, together with interest thereon at 7 per cent per annum from June 21, 1907, the date of the conversion, and for costs in both courts.

It is so ordered.