WESTERN INDUSTRIES, INC., a Nevada Corporation; TORGINOL INDUSTRIES, INC., a Corporation, Appellants, v. GENERAL INSURANCE COMPANY, WILLIAM J. MOORE, Jr., and PATRICIA MOORE, Husband and Wife, and LAWRENCE P. STECHER, Respondents.

No. 7090

March 31, 1975                                    533 P.2d 473

[Rehearing denied April 30, 1975]

*Vargas, Bartlett & Dixon,* and *H. Gregory Nasky,* Las Vegas, for Appellants.

*Beckley, DeLanoy & Jemison, Chartered,* Las Vegas; and *Foley Brothers,* Las Vegas, for Respondents.

## OPINION

By the Court, GUNDERSON, C. J.:

This appeal arises from two actions on promissory notes, separately commenced by General Insurance Company of America (General), but consolidated in the district court for hearing and judgment.

Western Industries, Inc. (Western), as maker, issued the first note, dated March 1964 and in the sum of $29,314.95, to James Purvis as payee. William Moore, Jr. and Lawrence Stecher guaranteed it; Purvis assigned it to General. Moore and his wife Patricia as makers issued the second note, dated May 1964 and for $113,386.00, directly to General as payee, with Western as unconditional guarantor. Both were issued to implement a stock exchange agreement, whereby Western was to obtain most of the common stock of Westchester Gardens, Inc. (Gardens). For various reasons, Western rescinded the agreement and refused to honor the notes held by General. General sued Western, the Moores and Stecher.

The Moores and Stecher crossclaimed against their co-defendant Western, for destroying the value of other promissory notes they held, as well as for the value of Western stock received through the stock exchange agreement. Western filed cross and counterclaims against the Moores, Stecher and General. By written stipulation, testimony was taken before a special master, whose findings of fact and conclusions of law the district court adopted. General received judgment on its two notes with costs and attorneys' fees. The Moores and Stecher

received judgment for the value of their Western stock. Western's cross and counterclaims were denied.

On this appeal, which followed, the major contentions are:

(1) That Moore and Richard Stevens, as Western officers, lacked corporate authority to proceed as they did with the stock exchange agreement, and lacked authority to obligate Western on the promissory notes General now holds;

(2) That the district court erred in awarding General attorneys' fees beyond the amount prayed;

(3) That Moore breached his fiduciary obligation to Western by not making full, good faith disclosure of his actions and his interest in the stock exchange;

(4) That the stock exchange agreement failed to qualify as a tax-free exchange under the Internal Revenue Code, and is therefore unenforceable;

(5) That the promissory notes held by the Moores and Stecher were issued incident to a civil conspiracy amounting to fraud, and are therefore unenforceable;

(6) That the special master and court erred in finding good and valuable consideration for certain notes held by Moore; and

(7) That the district court erred in granting judgment on the Western stock held by Mrs. Moore and Stecher as a result of the stock exchange.

Of these contentions, only the sixth has merit.

This dispute centers on a stock exchange agreement between Western and Lawrence Stecher as agent for Gardens' stockholders. Gardens, incorporated to build and operate an apartment complex in Las Vegas, held a commitment for a $2,970,000 F.H.A. insured loan to finance the project. Western's principal activity was acquisition and operation of other businesses. During the time surrounding the stock exchange agreement, Moore was president of both corporations, a fact fully disclosed to each corporation's board of directors.

Western's board had several times discussed acquiring all or part of the stock of Gardens. Accounting projections had been reviewed. At the November 1963 meeting, after further discussion, Western's board, with Moore passing his vote, unanimously adopted the following resolution:

> "The President and/or Secretary are hereby authorized to accept on behalf of the Corporation, the purchase of Westchester Gardens, Inc., as outlined in the attached projection."

Moore and Stevens, the corporate secretary, thereupon proceeded with details necessary to purchase the stock of Gardens, in a tax-free stock exchange. In March 1964, Western through Moore, and Stecher as agent for Gardens' shareholders, entered a formal agreement reciting exchange of all shares of Gardens' common stock in return for 300,000 shares of Western stock.

Concurrently, Moore proceeded with details to insure closing of the final insured loan. Gardens issued long-term promissory notes to conform its debts to F.H.A. regulations, requiring all obligations to be evidenced by long-term notes with principal payable after payment of the F.H.A. loan. These are the notes the Moores and Stecher now hold. The notes General holds were also issued during this time as part of details necessary to close the loan and complete the stock exchange.

Then, in May 1964, Western's board of directors voted to rescind the stock exchange agreement, citing as reasons lack of authority in Moore and Stevens, want of full disclosure by Moore, and violation of fiduciary obligations by Moore. Western thereupon demanded return of its stock, and placed stop orders on further transfers thereof, while retaining all of the Gardens' stock subject to return of the Western stock. Gardens could not complete its projects, and the F.H.A. foreclosed.

The special master, whose recommended findings the district court adopted, determined the rescission was unlawful and without just cause. He further determined that, as a direct result of Western's refusal to comply with the stock exchange or to return Gardens' stock, Gardens became powerless to act with respect to its properties, causing foreclosure by the F.H.A.; that the Gardens promissory notes held by the Moores and Stecher were rendered worthless; and that General was caused to initiate action on its two promissory notes. Judgment against and appeal by Western followed.

1. We reject the contention that Moore and Stevens lacked corporate authority to proceed as they did with the stock exchange agreement, and to obligate Western on the notes held by General.

Among other things, the record establishes the November resolution placed no express limitations on Moore and Stevens' authority; Moore and Stevens were Western's only salaried officers, and conducted virtually all of its business dealings; and Moore and Stevens not uncommonly proceeded with details necessary to an acquisition, with only general board authorization. Whether they had authority to proceed as they did was a

question for the trier of fact and, since the record contains adequate support, we will not disturb the master's finding of authority. NRCP 52(a); Beverly Enterprises v. Globe Land Corporation, 90 Nev. 363, 526 P.2d 1179 (1974); Szczeraski v. Richard, 89 Nev. 581, 517 P.2d 791 (1973); Brandon v. Travitsky, 86 Nev. 613, 472 P.2d 353 (1970). "This rule is particularly applicable where the evidence is conflicting and the credibility of witnesses and the weight to be given evidence is in issue." Brandon v. Travitsky, id, 86 Nev. at 615, 472 P.2d at 355.

The same rationale applies to the contention that Moore and Stevens lacked authority to obligate Western on the notes held by General. The record supports a determination that issuance and guaranty of the notes General holds was necessary to accomplish the tax-free stock exchange, which Moore and Stevens had authority to accomplish. Moreover, as to the larger note, it appears General required proof that Western had authorized the guarantee, and received a certificate of corporate resolution, signed by Stevens as corporate secretary, and bearing the corporate seal. While the certificate indicates the board of directors met May 12, 1964, there is evidence no meeting was held that day; hence, Western urges that reliance on corporate authority cannot be justified by reference to that certificate. The record reflects, however, that it was not unusual for Moore and Stevens to effectuate Western's business with certificates reflecting imaginary board action, and that the board condoned and apparently approved the practice. Further, the act of certifying corporate action is an act of the corporation within the normal scope of authority of the corporate secretary. Cf. Condor Corporation v. Cunningham, 162 P.2d 21 (Cal.App. 1945). Thus, in the light of all these facts, a determination of authority is supported by the record.

2. As the master recommended, the court awarded attorney fees equal to 20% of General's total recovery. This exceeded what General had originally prayed, but Western's counsel had stipulated that, if General's counsel testified, he would state the "Bar recommended minimum fee was reasonable and I understand that was 20 per cent." Neither then, nor in objections to the master's report, did counsel seek to confine the issue to the pleadings. Thus, the court properly proceeded on the stipulated proofs. NRCP 15(b); cf. Essex v. Guarantee Insurance Co., 89 Nev. 583, 517 P.2d 790 (1973); Close v. Isbell Construction Co., 86 Nev. 524, 471 P.2d 257 (1970).

228

3. We reject the contention that Moore breached his fiduciary obligation by failing fully to disclose his actions and his interests in the stock exchange. Certainly, a corporate officer and director has a fiduciary relationship with his corporation, Talbot v. Nevada Fire Insurance Co., 52 Nev. 145, 283 P. 404 (1930), and thus owes a duty of good faith, honesty and full disclosure. Still, whether such duty has been breached is, again, a question the trier of fact must resolve after scrutinizing all the evidence, which here justified the finding that Moore did not breach his duty. NRCP 52(a).

4. At the November 1963 board meeting, the stock exchange was generally authorized, provided it could be accomplished on a tax-free basis under Internal Revenue Code §§ 355 and 368. We are told such an exchange was impossible because Western could not obtain the 100 preferred shares previously issued under 24 C.F.R., 207.18(c), to enable the F.H.A. to operate the project in case of default on the loan. However, as the I.R.S. views the matter, F.H.A. ownership of such preferred shares does not prevent a stock exchange from qualifying for tax-free treatment. See: Revenue Ruling 66–333, C.B. 1966–2. We have neither been referred to, nor have we been able to find, any contrary authority. Accordingly, we reject the contention that the stock exchange did not qualify for tax-free treatment as contemplated, and that it was therefore unenforceable. Sellman Auto, Inc. v. McCowan, 89 Nev. 353, 357, 513 P.2d 1228, 1231 (1973); General Electric Co. v. Bush, 88 Nev. 360, 368, 498 P.2d 366, 371 (1972).

5. It is urged that the promissory notes held by the Moores and Stecher are unenforceable because they arose from a violation of 18 U.S.C. 1010, which makes it a crime to utter a false document to influence the F.H.A. in obtaining a federally insured loan. We are told a certain title policy issued in favor of the F.H.A. was "false" because it insured a clear title to Gardens' property, when in fact such property was subject to liens. The master and district court found the parties' actions to be in good faith; error is not demonstrated concerning that finding; and after review of the record we are unwilling to say the district court erred in not finding Western had met the heavy burden of proving fraud. See: Clark Sanitation v. Sun Valley Disposal, 87 Nev. 338, 487 P.2d 337 (1971); Havas

v. Alger, 85 Nev. 627, 461 P.2d 857 (1969); Miller v. Lewis, 80 Nev. 402, 395 P.2d 386 (1964).

6. The special master found all notes held by the Moores and Stecher were issued for good and valuable consideration, but concerning two particular notes we disagree.

Defendant's exhibit Z is a $20,000 note issued to Moore by Gardens. The minutes of Gardens' board of directors meeting in May 1964 (defendants' exhibit k-1) reflect this note was authorized to repay advances by Western, but issued to Moore because of insistence by F.H.A. officials, and was to be assigned to Western after final closing of the federally insured loan. Thus, so far as we can see, Moore has given no consideration for this note, and the judgment on it is reversed.

Similarly, defendant's exhibit T–P is a $113,386.00 note Gardens issued to James Purvis. Gardens owed this sum to Purvis as general contractor for Gardens' F.H.A. project; however, Purvis would not accept Gardens' long-term note as F.H.A. regulations made necessary. To alleviate the problem and facilitate closing of the loan, a plan evolved whereby Purvis agreed to receive Gardens' long-term note (defendant's exhibit T–P), and then assign it to Moore in consideration of Moore and his wife issuing their note for the same amount to General, unconditionally guaranteed by Western. (Purvis had obligations to General, which this transaction discharged in whole or in part.) The Moores' note is the larger one on which General here sued and recovered judgment gainst Western, Moore and his wife. Thus, it appears that unless Moore hereafter pays part of the judgment entered on the note held by General, he actually will have given nothing for defendant's exhibit T–P. Accordingly, he is not entitled to an unqualified judgment thereon, and the judgment entered should be modified in this particular.

7. As a result of the wrongful stop order which prevented further transfer thereof, the district court awarded the Moores and Stecher judgment for the full value of their Western stock. The judgment and the special master's findings of fact are silent concerning disposition of the stock, and this court has been most concerned about the award of the stock's full value to the Moores and Stecher, absent provision for the stock itself. Counsel have raised no issue in this regard, but it seems that were judgment granted the Moores and Stecher for their stock's full

value, while allowing them to keep it, this would be plain error. Thus, we treat the problem *sua sponte.* Williams v. Zellhoefer, 89 Nev. 579, 517 P.2d 789 (1973).

As a basis for its judgment, the lower court may well have treated the special master's findings of fact as to the stock as a conversion at the time of the wrongful stop orders, and upon evidence in the record, such a determination could be sustained consistent with legal principles. Cann v. Williams Land & Livestock Co., 56 Nev. 242, 48 P.2d 887 (1935); Robinson M. Co. v. Riepe, 40 Nev. 121, 161 P. 304 (1916). A demand for return of converted property is not necessary when the holder asserts ownership. Robinson M. Co. v. Riepe, id, 40 Nev. at 127, 161 P. at 305.[1]

In a conversion situation, the wrongful holder of the property may be treated as the forced buyer. See: Prosser, Law of Torts, 80–81, 4th edition, 1971. Thus, upon payment by Western, the Moores and Stecher must tender back their stock in Western.

Accordingly, we reverse the judgment as to those matters concerned in the sixth point of this opinion, and affirm in all other respects. On remand, the district court will enter a modified judgment consistent with this opinion.[2]

BATJER, ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.

---

[1] In such cases, a demand would be futile. See: Redd Distributing Co. v. Bruckner, 270 A.2d 580, 583 (Vt. 1970); Genova v. Johnson, 321 P.2d 1050, 1054 (Or. 1957); Crutcher v. Scott Pub. Co., 253 P.2d 925, 932 (Wash. 1953).

[2] Present counsel did not represent Western in the court below.