In re AGRIBIOTECH, INC., Debtor.

Anthony H.N. Schnelling, as Trustee of the AgriBioTech Creditors' Trust, the Duly Appointed and Authorized Representative of the Chapter 11 Estates of AgriBioTech, Inc., Las Vegas Fertilizer Co., Inc., Garden West Distributors, Inc., and Geo. W. Hill & Co., Inc., Plaintiff,

v.

Johnny R. Thomas; John C. Francis; Scott J. Loomis; James W. Hopkins; Kent Schultze; Richard P. Budd; Randy Ingram; Thomas B. Rice; Drew Kinder; James W. Johnston; L. Glenn Orr; Harrison M. Baines, Jr.; Kathleen L. Gillespie; Henry Ingalls; Doug Fisher; Kenneth Budd; KPMG Peat Marwick LLP, a limited liability partnership; KPMG Consulting, Inc., a Delaware corporation; Snow Becker Krauss, P.C., a professional corporation; Elliot Lutzker; Womble Carlyle Sandridge & Rice, PLLC, a professional limited liability company, Defendants.

CIV. No. CV–S–02–0537–PMP (LRL).
Bankruptcy No. BK–S–00–10533–LBR.
Adversary No. 02–1023–LBR.

United States District Court,
D. Nevada.

Dec. 8, 2004.

Candace C. Carlyon, Shea & Carlyon, Las Vegas, NV, David Bryant, Scott M. DeWolf, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, LLP, Jay Madrid, Winstead, Sechrest & Minick, Dallas, TX, for Anthony H.N. Schnelling.

C. Keith Rooker, Michael Rawlins, Rooker, Later & Rawlins, Henderson, NV, Gary F. Bendinger, Richard W. Casey, Wesley D. Felix, R. Lee Saber, Bendinger, Crockett, Peterson, Greenwood & Casey, Salt Lake City, UT, for Defendant KPMG LLP.

## ORDER

PRO, Chief Judge.

Presently before the Court is Defendant KPMG LLP's Motion for Summary Judgment on All Claims Purportedly Brought by the Trustee on Behalf of Non–Debtor Third Parties (Doc. # 688), filed on July 20, 2004. Plaintiff Anthony H.N. Schnelling filed the Trustee's Response to KPMG LLP's Motion for Summary Judgment on All Claims Purportedly Brought by the Trustee on Behalf of Non–Debtor Third Parties (Doc. # 702) on August 13, 2004. Defendant KPMG LLP filed a Reply (Doc. # 732) on September 13, 2004. That same day, KPMG LLP also filed KPMG LLP Errata Set of Exhibits to Motion for Summary Judgment on All Claims Purportedly Brought on Behalf of Non–Debtor Third Parties (Doc. # 733).

## I. BACKGROUND

AgriBioTech, Inc. ("AgriBioTech" or "ABT") originally was founded in 1983. (Third Amended Compl. (Doc. # 328) ¶ 51.) As of 1998, AgriBioTech was the largest forage and turfgrass seed producer in the United States. (*Id.* ¶ 1.) "On January 25, 2000, ABT and three of its subsidiaries, L[as] V[egas] F[ertilizer Co.], Garden West [Distributors,] and [Geo. W.] Hill [& Co., Inc.] (collectively, the 'Debtors') commenced jointly administered Chapter 11 cases by filing voluntary petitions under Chapter 11 of the United States Bankruptcy Code ...." (*Id.* ¶ 12.) The Debtors created a Creditors' Trust pursuant to the First Amended Joint Plan of Reorganization ("Reorganization Plan" or "Plan"), which United States Bankruptcy Judge Linda B. Riegle confirmed. (*Id.;* Trustee's Resp. to KPMG LLP's Mot. for Summ. J. on All Claims Purportedly

Brought by Trustee on Behalf of Non–Debtor Third Parties, Ex. B.)

Plaintiff Anthony H.N. Schnelling ("Trustee"), as Trustee of the AgriBioTech Creditors' Trust, brought this lawsuit against former AgriBioTech professionals based on the rights allegedly assigned him pursuant to the Plan. (First Am. Compl. (Doc. # 438) ¶¶ 1, 7.) The Trustee brought several claims against ABT's former outside accountant, Defendant KPMG LLP ("KPMG"). The Third Amended Complaint asserts against KPMG claims for professional negligence (count 8), participation in breach of fiduciary duty (count 9), actual and constructive fraud (count 16), and aiding and abetting actual and constructive fraud (count 18).[1] (Third Am. Compl. ¶¶ 351–387, 393–97, 403–09.) KPMG moves for summary judgment on these claims, arguing the Trustee has no standing to pursue claims not belonging to the Debtors' estate.

## II. DISCUSSION

KPMG argues the Trustee has no standing as a matter of law to bring third party or creditor claims that do not belong to the Debtors. KPMG relies primarily on *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), which held that a bankruptcy trustee lacks standing to assert misconduct claims on behalf of debenture holders against a third party indenture trustee, and *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988), which held that a bankruptcy trustee cannot pursue third party creditor claims, even where the party assigned those claims to the trustee to pursue on their behalf. The Trustee responds that *Caplin* and

---

1. The Third Amended Complaint also seeks to avoid certain alleged preferential and fraudulent transfers to KPMG (counts 21 & 30). (*Id.* ¶¶ 426–33, 478–81.) These counts are the subject of a separate summary judgment motion filed by KPMG.

*Williams* are distinguishable because in those cases, the trustee was not the real party interest whereas here the claims asserted against KPMG in the Third Amended Complaint belong to the Debtors' estate.

■ The commencement of a bankruptcy case creates an estate, and the bankruptcy trustee is required to marshal all of the estate's property for the estate's benefit. 11 U.S.C. §§ 541(a), 704. Title 11 U.S.C. § 541 defines property of the bankruptcy estate in seven subsections. Under subsection (a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). This includes causes of action. H.R. Rep. 95–595, 95th Cong., 1st Sess. 367–68 (1977); S. Rep. 95–989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6323, 5787, 5868.[2] The debtor's estate therefore includes any causes of action of the debtor at the commencement of bankruptcy proceedings.

■ Whether a bankruptcy trustee has standing to pursue a cause of action thus depends upon whether the cause of action belongs to the debtor's estate. The Supreme Court first explored this issue in *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). In that case, the trustee in reorganization attempted to assert claims of misconduct by an indenture trustee on behalf of persons holding debentures issued by the bankrupt organization. *Caplin*, 406 U.S. at 416, 92 S.Ct. 1678.

The Supreme Court held the trustee lacked standing to pursue these claims. *Id.* at 428–34, 92 S.Ct. 1678. The Supreme Court rested its holding on three concerns: (1) that the Bankruptcy Act then in effect contained no provision granting the trustee authority to collect money not owed to the estate; (2) the bankrupt organization had no independent claim of its own against the indenture trustee; and (3) a suit by the trustee would not bind the third party debenture holders, possibly resulting in conflicting results, proliferation of litigation, and questions about who is bound by the outcome of the trustee's litigation. *Id.*

Following *Caplin*, the United States Court of Appeals for the Ninth Circuit addressed the question of whether a bankruptcy trustee could pursue claims on behalf of third party creditors who assigned claims to the trustee. *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988). In *Williams*, the trustee in bankruptcy solicited from creditors of the bankrupt organization assignments of their claims against a bank that allegedly assisted in financing the bankrupt organization's Ponzi scheme. *Williams*, 859 F.2d at 665. Under the terms of the assignment, any recovery on the assigned claims first would be used to pay costs and expenses of pursuing the claims, with the balance to be paid to the investors who assigned their claims. *Id.* Investors who did not assign their claims would not receive any proceeds of the litigation. *Id.* The bank moved to dismiss on the ground that the trustee had no stand-

---

**2.** A debtor's estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). This includes causes of action assigned to the estate after the commencement of bankruptcy proceedings. *See Sheehan v. Richardson*, 315 B.R. 226, 238–39 (D.R.I.2004); *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. 646, 650 (Bankr.N.D.Ill.1998), *rev'd in part on other grounds*, 2000 WL 28266 (N.D.Ill.2000). Unlike subsection (a)(1), subsection (a)(7) property is not temporally limited to interests the estate holds "as of the commencement of the case." *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. at 650; *In re Wilson*, 694 F.2d 236, 238 (11th Cir. 1982).

ing to bring the assigning investors' claims. *Id.*

The Ninth Circuit concluded that the same concerns that motivated the Supreme Court's ruling in *Caplin* still existed under the facts presented in *Williams*, and held that the trustee lacked standing to assert these third party creditor claims, even though the investors assigned their claims to the trustee. *Id.* at 666–67. First, the Court found that even though the investors assigned their claims, the investors remained the real parties in interest because the trustee and the estate would recover only administrative costs from a favorable judgment while the assigning investors would receive the bulk of any recovery. *Id.* "In reality, then, the creditors [ ] assigned their claims only for purposes of bringing suit. As a result, the Trustee, as in *Caplin*, [was] attempting to 'collect money not owed to the estate.'" *Id.*

Second, the Court noted that the bankrupt corporation had no claim of its own against the bank. *Id.* at 667. Finally, the Court noted that "although those investors who assigned their claims are precluded from bringing individual suits, there remains the potential for inconsistent actions by those who did not assign." *Id.* The Court also expressed concern that giving the trustee standing to pursue these claims would not reduce litigation because other investors had not assigned their claims. *Id.* The Court thus held the trustee lacked standing to pursue these claims. *Id.*

Congress has considered legislation that would have overruled *Caplin*, but chose not to do so. In 1978, Congress enacted the Bankruptcy Code. As part of the revision, the House originally proposed a subsection (c) to 11 U.S.C. § 544 which was intended to overrule *Caplin*. Subsection (c) would have provided that the trustee may act as a class representative to bring claims that a creditor or class of creditors had if the trustee could not otherwise recover on the claim involved, recovery would reduce the creditor's claims against the estate, the recovery would not create an allowable claim in favor of the defendant against the estate, and enforcement of the action would be in the estate's best interests. H.R. Rep. 95–595, 95th Cong., 1st Sess. 370–71 (1977). A judgment in such an action would bind all creditors that could have brought the claim, and any recovery would be for the benefit of those creditors only. *Id.* This provision was deleted without comment from the final version of the bill. 124 Cong. Rec. H 11097 (Sept. 28, 1978).

Since *Caplin*, courts addressing trustee standing have answered the question in the same way, although they have formulated the question in two ways. First, several cases have formulated the question around whether, under the relevant state law, the asserted claim belongs to the debtor or its individual creditors. These cases generally have involved the question of whether a trustee in bankruptcy may bring an alter ego claim or pierce the corporate veil of the bankrupt organization.[3] Other courts have considered

---

3. *See e.g., In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d 1222, 1227–30 (8th Cir.1987) (trustee could not pursue alter ego claim to pierce its own corporate veil where state law did not permit corporation to pierce its own veil; such a claim belonged to estate's creditors); *St. Paul Fire and Marine Ins. Co. v. PepsiCo. Inc.*, 884 F.2d 688, 701–02 (2d Cir. 1989) (holding that third party creditor had no standing to pursue alter ego claim against bankrupt subsidiary's parent company; alter ego claim could be pursued by bankrupt organization under Ohio law and thus alter ego claim belonged to trustee); *Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir.1988) (finding alter ego claim belonged to debtor's estate over which trustee has full authority); *Koch Refining v. Farmers*

whether the asserted claims were "general" claims of harm inflicting identical harm on all creditors, or "specific" claims where a creditor suffers individualized harm peculiar to that creditor.[4] As the court in *In re Western World Funding, Inc.*, 52 B.R. 743 (Bankr.D.Nev.1985) explained:

> Where the injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.

*Id.* at 775. According to these courts, permitting the trustee to pursue general creditor claims serves the orderly and equitable distribution of the bankrupt's assets. *See, e.g., In re Folks*, 211 B.R. 378, 386–87 (9th Cir. BAP 1997); *In re Schimmelpenninck*, 183 F.3d 347, 360 (5th Cir. 1999).

■ Although the parties cite these cases as conflicting authority supporting their opposing views in this case, these cases are consistent with each other and with the holdings in *Caplin* and *Williams*. They all stand for the proposition that a bankruptcy trustee "has the right to bring any action in which the debtor has an interest because this is property of the estate, the trustee is acting to benefit the debtor's estate, and is ultimately benefiting the estate's creditors upon distribution," but trustees may not assert personal claims on behalf of certain creditors where the estate has no interest in the claims. *In re Folks*, 211 B.R. at 386–87 (quotation omitted). The question in each case is

---

*Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1344 (7th Cir.1987) (whether alter ego belongs to estate or creditors is a question of state law); *In re Davey Roofing, Inc.*, 167 B.R. 604, 607–08 (Bankr.C.D.Cal.1994) (trustee had standing to pursue alter ego claim belonging to debtor under California law).

4. *See, e.g., In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir.1999) (actions by creditors asserting a generalized injury to the debtor's estate which ultimately affect all creditors belong to trustee); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir.1995) (claims predicated upon the distribution of misleading documents to investors are the property of those investors, and may be asserted only by them because cause of action required proof that each individual investor relied on the misleading statement); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir.1994) (expressing view that "there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct—not derivative—claim against the third party, which only the creditor himself can enforce"); *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 985–87 (11th Cir.1990) (trustee had no standing to assert against third party claims of certain individual creditors who purchased securities through the debtor on its margin account with the third party, which subsequently sold the securities); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir.1989) (creditor had standing to pursue claim where it could show injury distinct from other creditors); *In re Folks*, 211 B.R. 378, 387 (9th Cir.BAP1997) (finding alter ego claim asserted general injury to all creditors and thus belonged to estate and not individual creditors); *In re LendVest Mortg., Inc.*, 1990 WL 357806, *3 (N.D.Cal.1990) (concluding trustee's RICO and misrepresentation claims for general harm to corporation and depletion of its assets were separate from creditor class action alleging distinct injuries to certain creditors by non-debtor third party; automatic stay in debtor's bankruptcy did not stay class action against non-debtor third party); *Begier v. Price Waterhouse*, 81 B.R. 303, 305–06 (E.D.Pa.1987) (holding claims that creditors relied on false financial statements prepared by third party in making financial decisions with respect to debtor belonged to each creditor personally and trustee therefore had no standing to bring those actions).

whether the claim asserted by the trustee is one in which the estate has an interest, and is therefore property of the estate from which the estate, and derivatively the creditors as an undifferentiated whole, ultimately will benefit.[5] Whether a cause of action is property of the estate or belongs to individual creditors is a question of state law. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *In re Cohen,* 300 F.3d 1097, 1104 (9th Cir.2002).

Thus, the central issue is whether under Nevada state law the debtor could have brought the asserted claims against the defendant or whether the causes of action belong to individual creditors. To make this determination, the Court must examine the Third Amended Complaint and evaluate whether the claims the Trustee actually asserts against KPMG belong to the estate or to individual creditors.

In Count 8, the Trustee alleges professional negligence. (Third Am. Compl. ¶¶ 351–54.) The Complaint alleges KPMG was ABT's auditor and accountant, and thereby owed to ABT a duty of care in performing these services. (*Id.* ¶ 352.) According to the Complaint, KPMG breached this duty by issuing clean and unqualified audit opinions and certifying ABT's financial documents when KPMG should not have, allowing ABT to maintain overstated asset values, failing to disclose ABT's lack of financial controls, and acting with a conflict of interest by being ABT's auditor and consultant at the same time. (*Id.* ¶ 353.)

■ Under Nevada law, to establish a claim for professional negligence, a plain-tiff must show: (1) the defendant had a duty to use the skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) the defendant breached that duty; (3) the breach proximately caused the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Morgano v. Smith,* 110 Nev. 1025, 879 P.2d 735, 738 (1994). It is the contractual relationship between the professional and its client that creates a duty of due care upon the professional. *Warmbrodt v. Blanchard,* 100 Nev. 703, 692 P.2d 1282, 1285 (1984).

■ As pled in the Complaint and under the applicable law, count 8 belongs to ABT, and thus to the Trustee in bankruptcy. The Complaint alleges KPMG breached its duty to its client, ABT. That duty arose out of the contractual relationship between ABT and KPMG to perform accounting services. The duty runs to ABT and thus the action to enforce that duty belongs to ABT. The Trustee, as successor to ABT's claims, therefore has standing to assert count 8.

Count 9 alleges KPMG participated in a breach of fiduciary duties. (Third Am. Compl. ¶¶ 355–59.) According to the Complaint, ABT's officers and directors breached the fiduciary duties they owed to ABT, and while in the vicinity of insolvency, to ABT's creditors. (*Id.* ¶ 356–57.) The Complaint alleges that as ABT's auditor, KPMG was aware of these fiduciary duties and participated in the breach of those duties by issuing clean and unqualified audit opinions and certifying ABT's financial documents when KPMG should

---

**5.** This view is consistent with the concerns expressed in *Caplin.* A trustee pursuing claims belonging to the debtor is not attempting to collect money not owed to the estate. If the claim belongs to the debtor, then the bankrupt organization necessarily has an independent claim of its own against the defendant. Finally, a suit by the trustee would bind the real parties in interest, the debtor corporation and the defendant that allegedly caused it harm.

not have, allowing ABT to maintain overstated asset values, failing to disclose ABT's lack of financial controls, and acting with a conflict of interest by being ABT's auditor and consultant at the same time. (*Id.* ¶ 358.)

Under Nevada law, an officer or director of a corporation "stands as a fiduciary to the corporation." *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1224 (1987); *see also* Nev.Rev.Stat. 78.138; *Western Indus., Inc. v. Gen. Ins. Co.*, 91 Nev. 222, 533 P.2d 473, 476 (1975); *Foster v. Arata*, 74 Nev. 143, 325 P.2d 759, 765 (1958). The United States Supreme Court has held that an officer or director's breach of his fiduciary obligations to a corporation "is enforceable directly by the corporation, or through a stockholder's derivative action, [but] in the event of bankruptcy of the corporation, [it is] enforceable by the trustee" because "that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders." *Pepper v. Litton*, 308 U.S. 295, 306–07, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Count 9 alleges ABT's officers and directors breached their duties to ABT, and that KPMG participated in that breach. This claim arises out of the officers' and directors' duties to the corporation, and it therefore is the corporation's claim to enforce. The Trustee, as successor to ABT's claims, therefore has standing to assert count 9.

Counts 16 and 18 involve what the Trustee refers to as "effective date accounting" fraud. According to the Complaint, ABT insiders wanted to portray ABT as a fast growing and successful company. (Third Am. Compl. ¶ 207.) To further this goal, these insiders sought to "inflate the reported revenues and profits of ABT by adding the revenues and profits of the acquired companies to ABT's financial statements even before the acquisitions were actually closed." (*Id.* (emphasis omitted).) ABT thus reported as its own revenues the revenues of potentially acquired companies before the sales closed, and chose effective dates in a strategic manner to maximize reported revenues. (*Id.* ¶¶ 207–09.) The Complaint alleges use of effective date accounting is permissible under generally accepted accounting principles only if ABT actually assumed control of the acquired company on the effective date. (*Id.* ¶ 210.) According to the Complaint, ABT used effective date accounting even when it was not appropriate under the circumstances, thus causing it to issue false financial statements. (*Id.* ¶¶ 210–11.)

Count 16 alleges that KPMG, as ABT's accountant, owed ABT a duty to disclose all accounting improprieties "being perpetrated on the Company by corporate insiders and to use its good faith efforts to prevent company cover ups of accounting improprieties by ABT officers." (Third Am. Compl. ¶ 394.) Count 16 alleges that despite these duties, KPMG concealed from and misrepresented to ABT the factual basis for ABT's use of effective date accounting, concealed and misrepresented to ABT the impropriety of using effective date accounting, knowingly submitted to innocent ABT officers and directors false financial statements prepared using effective date accounting, and failed to disclose to the innocent officers and directors the effective date accounting fraud. (*Id.* ¶ 395.) According to the Complaint, the effective date accounting fraudulently prolonged ABT's corporate life, causing it to incur increasing debt load it could not afford. (*Id.* ¶¶ 396–97.)

Similarly, count 18 alleges KPMG, as ABT's auditor and accountant, owed ABT

the duty to disclose, and not to cover up or assist in covering up, accounting improprieties by ABT insiders. (*Id.* ¶ 404.) The Complaint further alleges that certain ABT insiders were committing effective date accounting fraud. (*Id.* ¶ 405.) According to the Complaint, KPMG had actual knowledge of the fraud and assisted these insiders in perpetrating and then covering up the fraud by certifying false financial statements, falsely representing the propriety of using effective date accounting under the circumstances, and failing to disclose the fraud to ABT's innocent officers and directors. (*Id.* ¶¶ 406–07.) The Trustee asserts KPMG's acts and omissions fraudulently prolonged ABT's corporate life, causing it to incur increasing debt load it could not afford. (*Id.* ¶ 408.)

Counts 16 and 18 allege damages to ABT based on a breach of duties owed to ABT. Counts 16 and 18 both premise KPMG's liability upon its duties to its corporate client arising out of the professional relationship. Both counts allege KPMG breached those duties to its client by certain acts or omissions relating to the alleged effective date accounting fraud being perpetrated by ABT insiders. Both counts allege KPMG's acts or omissions caused damages to ABT by permitting the effective date accounting to fraudulently prolong ABT's life and induce it to incur increased debt. *See, e.g., Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 351 (3d Cir.2001) (holding Pennsylvania would recognize a "deepening insolvency" theory as independent harm to the corporation and listing other federal cases so holding); *Schacht v. Brown,* 711 F.2d 1343, 1350 (7th Cir.1983) (noting that fraudulently prolonging a corporation's life does not confer a benefit on the corporation). Accordingly, the Trustee has standing to pursue these claims.

KPMG has asserted repeatedly that it cannot discern whether the Trustee is attempting to pursue non-debtor third party claims of ABT's individual creditors. The confusion may stem from the Trustee's discovery responses, the parties' disagreement over the legal issue of the Trustee's standing, and the expert for the Trustee's reference to assertions that KPMG's wrongdoing caused ABT's creditors to lose money. For example, the Trustee's expert appears to offer an alternative method of measuring of damages in this action based on the loss to ABT's creditors. (Trustee's Resp. to KPMG LLP's Mot. for Summ. J. on All Claims Purportedly Brought on Behalf of Non–Debtor Third Parties, Ex. J at 179 (describing "shortfall suffered by the creditors of ABT" as "an alternative basis for assessing the extent of losses resulting from the continued operation of ABT").) Despite the references to the creditors' losses, an examination of the Third Amended Complaint confirms the Trustee is asserting claims that belong to the estate. Whether damages to the creditors is a proper measure of damages to the debtor is a separate question from whether the Trustee has standing to assert claims that allege the defendant harmed the debtor. The Bankruptcy Code and applicable case law establish the Trustee has standing to bring such claims.

Because the Trustee has standing to pursue counts 8, 9, 16, and 18 against KPMG, the Court will deny KPMG's motion for summary judgment for non-debtor third party claims.

## III. CONCLUSION

IT IS THEREFORE ORDERED that KPMG LLP's Motion for Summary Judgment on All Claims Purportedly Brought by the Trustee on Behalf of Non–Debtor

Third Parties (Doc. # 688) is hereby DE-
NIED.