DIONICIO ALBIOS and KATHRYN ALBIOS, Appellants/ Cross-Respondents, *v.* HORIZON COMMUNITIES, INC., Respondent/Cross-Appellant.

No. 41589

April 27, 2006                    132 P.3d 1022

---

[23]*Id.* at 292-93 (Thomas, J., dissenting).

410

[Rehearing denied July 6, 2006]

*Law Office of Donna Lee Schubert* and *Donna Lee Schubert*, Henderson, for Appellants/Cross-Respondents.

*Bennion & Clayson* and *Kenneth M. Marias*, Las Vegas; *Guenther and Castronova LLP* and *Stephen G. Castronova*, Las Vegas; *Lemons Grundy & Eisenberg* and *Robert L. Eisenberg*, Reno, for Respondent/Cross-Appellant.

## OPINION

By the Court, ROSE, C. J.:

Appellants Dionicio Albios and Kathryn Albios sued respondent Horizon Communities, Inc., for constructional defects in their single-family residence located in Clark County, Nevada. Prior to trial, Horizon served the Albioses with three successive offers of judgment, which the Albioses rejected. Following a jury trial, the jury found in favor of the Albioses and awarded them $100,000, which was reduced by 5 percent for their comparative negligence. The Albioses filed a post-trial motion for attorney fees and costs under NRS 40.655. Horizon opposed the motion, arguing that, under NRCP 68 and NRS 17.115, the Albioses were not entitled to attorney fees because they did not recover a more favorable verdict at trial than the rejected offers of judgment. The district court awarded the Albioses costs and partial attorney fees pursuant to NRS 40.655. Both parties appealed.

We first conclude that although NRS 40.655 allows constructional defect claimants to recover attorney fees and costs as an element of damages, NRS 40.655 does not preclude application of the penalty provisions of NRCP 68(f) and NRS 17.115(4). We next conclude that successive offers of judgment extinguish previous offers and, therefore, Horizon's last offer of judgment is controlling for purposes of NRCP 68 and NRS 17.115. When prejudgment interest is appropriately added to the Albioses' verdict,[2] the Albioses recovered more than Horizon's last offer. Thus, the Albioses were properly awarded their attorney fees and costs. But in awarding the Albioses only $50,000 in attorney fees, the district court abused its discretion by not considering the factors set forth in *Brunzell v. Golden Gate National Bank*.[3] The district court also erred when calculating prejudgment interest and by disallowing prejudgment interest on costs and attorney fees. Thus, we affirm the judgment of the district court in part and reverse in part and remand for recalculation of attorney fees and prejudgment interest.

### FACTS

The Albioses filed a complaint against Horizon, a property developer, alleging constructional defects in their single-family

---

[2]*McCrary v. Bianco*, 122 Nev. 102, 109, 131 P.3d 573, 577 (2006); *State Drywall v. Rhodes Design & Dev.*, 122 Nev. 111, 118, 127 P.3d 1082, 1087 (2006).

[3]85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969).

residence located in Clark County, Nevada. Horizon answered the complaint and denied all of the substantive allegations. Horizon then filed a third-party complaint, seeking indemnity and contribution from various subcontractors.

The parties engaged in three mediations. After each of the mediations, Horizon submitted an offer of judgment to the Albioses under NRCP 68 and NRS 17.115. The first offer of judgment was for $150,000, inclusive of attorney fees and costs. The second offer of judgment was for $200,001, inclusive of attorney fees and costs. The third offer of judgment was for $100,000, exclusive of attorney fees and costs. None of the offers of judgment were apportioned between Mr. and Mrs. Albios. The Albioses rejected all three offers of judgment. The Albioses also served an offer of judgment on Horizon for $187,000, exclusive of attorney fees and costs. Horizon rejected the Albioses' offer. After trial, the jury returned a general verdict in favor of the Albioses in the amount of $100,000. The jury reduced the amount awarded to the Albioses by 5 percent for comparative negligence, resulting in a judgment of $95,000.

The Albioses and Horizon then each sought attorney fees and costs through post-trial motions. Horizon filed a memorandum of costs in the amount of $126,501.56 and a motion for attorney fees in the amount of $233,287.50. Horizon argued that it was entitled to costs and attorney fees under NRCP 68 and NRS 17.115 because the Albioses had rejected an offer of judgment more favorable than the verdict that they ultimately received. The Albioses opposed both the memorandum of costs and motion for attorney fees. The Albioses also filed a memorandum of costs in the amount of $192,707.85 and a motion for attorney fees in the amount of $232,200, both of which Horizon opposed. At the district court's request, both parties supplemented their motions with additional documentation regarding costs and then filed amended memoranda of costs and fees.

During the hearing on the parties' motions for attorney fees and costs, the district court stated, "[I]t's amazing how plaintiffs and defendants are within a token of each other's fees. So, there's no way I can say the fees are not fair; fees are fair on both sides [be]cause both sides charged about the same thing." It also stated,

> If I thought somebody had done something wrong or something bothered me, I'd be the first to say, gee, [Albioses], you know, you're wanting too much.
>
> I think both sides did an admirable job considering this is a one-residence, Chapter 40 case . . . .
>
> . . . .
>
> [Albioses], I think you did an admirable job. Congratulations to you and congratulations to the defense in this matter. You did the best you could under the circumstances.

The district court postponed its decision on the motions and ordered the parties to attend another settlement conference. The parties attended but were unable to resolve the matter through settlement. The Albioses then filed a supplemental request seeking $861.82 in costs and $11,500 in fees incurred as a result of post-trial matters. Horizon opposed these requests and filed its own supplement seeking additional fees in the amount of $7,350.

The district court then issued its decision regarding fees and costs. It noted,

> This is a tough call. I've thought about this case and thought about it, and I think that under—if you—a strict reading of *Beatt[ie]*, that certainly the offer of judgment, whether it be the first, second or third one, was not one that I would consider viable under the facts and—circumstances of this particular case. These are unusual cases, these construction defect, single home, cases.

Horizon asked for clarification regarding the district court's ruling on the offers of judgment, to which the district court responded,

> Under *Beatt[ie]* they weren't—they weren't applicable. They weren't—they weren't right. I mean they just weren't appropriate. There's no way she could have taken those offers of judgment, not with the costs and the— . . . and the cost of repairs.

The district court granted the Albioses' motion, awarding them $50,000 in attorney fees and $179,000 in costs. With regard to the $50,000 attorney fees award, the district court stated,

> I'm going to give plaintiff $50,000 in attorney's fees . . . . So I've cut down on the attorney's fees substantially and I think that it's one of those situations where having been a flat fee criminal lawyer part of my career, that sometimes we get into cases that we don't get full value for our services. But I certainly think that $50,000 is a fair amount under the facts and circumstances of this case.

The district court also awarded interest on the judgment but denied interest on the attorney fees and costs and denied the request for post-trial fees and costs. The district court calculated prejudgment interest under NRS 17.130(2) and fixed the interest rate at 11.5 percent, the rate in effect during July 2000, the period immediately preceding service of the Albioses' summons and complaint.

Horizon filed a motion to alter the judgment, arguing that prejudgment interest should be calculated by applying the interest rate provided by the State of Nevada, Division of Financial Institutions. The Albioses opposed the motion and sought to increase

the interest rate used in the court's calculation, arguing that interest should have been calculated in accordance with NRS 99.040. Horizon then withdrew its motion. After Horizon withdrew its motion, both parties filed notices of appeal from the judgment.

The Albioses argue on appeal that the district court erred by: (1) awarding only $50,000 in attorney fees when the reasonable amount of fees incurred amounted to $234,200; (2) disallowing prejudgment interest on costs; (3) calculating prejudgment interest under NRS 17.130, rather than NRS 99.040(1)(a); (4) failing to award the Albioses actual and reasonable costs; and (5) denying the Albioses' requests for post-trial attorney fees and costs.[4]

On cross-appeal, Horizon argues that NRS Chapter 40 should not prevail over NRCP 68 and NRS 17.115 and, therefore, the district court improperly awarded the Albioses attorney fees and costs because Horizon tendered offers of judgment more favorable than the Albioses' verdict. Horizon also argues that the district court erred by awarding prejudgment interest on future damages and in determining the amount of prejudgment interest.

## DISCUSSION

### Standard of review

We generally review the district court's decision regarding attorney fees for an abuse of discretion.[5] However, the district court may not award attorney fees absent authority under a statute, rule, or contract.[6] But even when a statute authorizes an award of attorney fees, if an offeree rejects an offer of judgment more favorable than the verdict obtained, the offeree shall not receive attorney fees and costs. In that situation, the offeror may be awarded attorney fees and costs.[7] Statutory interpretation presents a question of law, subject to de novo review.[8]

### NRS Chapter 40 versus NRCP 68 and NRS 17.115

The Albioses asked for attorney fees under NRS 40.655, which applies to plaintiffs in constructional defect cases. Horizon served

---

[4]The Albioses also challenge the district court's refusal to assert jurisdiction and address Horizon's motion to amend the judgment and the Albioses' motion for additional time to file a motion to alter or amend the judgment to correct the prejudgment interest. As we conclude that the district court incorrectly calculated prejudgment interest, this issue is moot.

[5]*Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 993, 860 P.2d 720, 722 (1993).

[6]*State, Dep't of Human Resources v. Fowler*, 109 Nev. 782, 784, 858 P.2d 375, 376 (1993).

[7]NRCP 68(f); NRS 17.115(4).

[8]*Banks v. Sunrise Hospital*, 120 Nev. 822, 846, 102 P.3d 52, 68 (2004).

the Albioses with offers of judgment pursuant to NRCP 68 and NRS 17.115. We have not previously addressed whether NRS 40.655 precludes application of the penalty provisions of NRCP 68 and NRS 17.115.

NRS 40.655 provides for attorney fees as damages in a constructional defect case:

> 1. Except as otherwise provided in NRS 40.650, in a claim governed by NRS 40.600 to 40.695, inclusive, the claimant may recover only the following damages to the extent proximately caused by a constructional defect:
> (a) Any reasonable attorney's fees;
> . . . .
> 2. The amount of any attorney's fees awarded pursuant to this section must be approved by the court.

Horizon argues that its offers of judgment were more favorable than the verdict obtained by the Albioses, and therefore, NRCP 68 and NRS 17.115 preclude the Albioses from recovering attorney fees and costs under NRS 40.655. The district court, while not expressly deciding whether NRS Chapter 40 overrides NRCP 68 and NRS 17.115, apparently agreed with the Albioses' contention that NRCP 68 and NRS 17.115 did not preclude them from recovering attorney fees under NRS 40.655, as it awarded attorney fees "in accordance with Chapter 40." We conclude, however, that NRS 40.655 does not preclude application of the penalty provisions of NRCP 68 and NRS 17.115.

"Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes."[9] And when possible, we construe statutes such that no part of the statute is rendered nugatory or turned to mere surplusage.[10] Under NRS 40.655, an award of attorney fees is not mandatory. Instead, NRS 40.655(1) provides that a claimant "may recover" attorney fees, and thus, recovery of attorney fees is permissible. Further, the amount of attorney fees awarded "must be approved by the court."[11] Additionally, NRS 40.650(1) states that the court "may" deny the claimant's attorney fees and instead award attorney fees to the contractor "[i]f a claimant unreasonably rejects a reasonable written offer of settlement made as part of a response pursuant to paragraph (b) of subsection 2 of NRS 40.6472." Thus, NRS Chapter 40 has left discre-

---

[9]*Allianz Ins. Co.*, 109 Nev. at 993, 860 P.2d at 723.

[10]*Paramount Ins. v. Rayson & Smitley*, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970).

[11]NRS 40.655(2).

tionary the award of attorney fees, as well as providing a penalty for failure to accept a settlement made under the constructional defect statutes.

In contrast, NRCP 68 and NRS 17.115 impose a mandatory penalty against a party who rejected a more favorable offer of judgment. NRCP 68 states that in such a situation "the offeree cannot recover any costs or attorney's fees" and NRS 17.115(4)(a) states that the court "[m]ay not award to the party any costs or attorney's fees."

To read NRS 40.655 as overriding NRCP 68 and NRS 17.115, as the Albioses contend and the district court arguably concluded, produces an absurd result. Under this reading, when a claimant in a constructional defect case rejects an offer and fails to obtain a more favorable judgment, although NRCP 68 and NRS 17.115 would mandate that the claimant be denied attorney fees and costs, NRS 40.655 would nevertheless allow the court to award the claimant attorney fees and costs. This reading renders NRCP 68 and NRS 17.115 nugatory in the context of constructional defect cases.[12] Additionally, much of the incentive to serve an offer of judgment would be removed, as NRCP 68 and NRS 17.115 would be essentially toothless. As such, the policy of NRCP 68 and NRS 17.115—to save time and money for the court system, the parties, and the taxpayer by rewarding the party who makes a reasonable offer and punishing the party who refuses to accept such an offer— would be thwarted.[13] This is an absurd result, and we do not interpret statutes in this manner.[14] Therefore, we conclude that, when a

---

[12]Additionally, we note that "[t]he judiciary, of course, has the inherent power to govern its own procedures; and that power includes the right to adopt and promulgate rules of procedure." *Whitlock v. Salmon*, 104 Nev. 24, 26, 752 P.2d 210, 211 (1988). We have also stated that this inherent power to make rules is "not only reasonable and necessary, but absolutely essential to the effective and efficient administration of our judicial system, and it is our obligation to insure that such power is in no manner diminished or compromised by the legislature." *Goldberg v. District Court*, 93 Nev. 614, 617, 572 P.2d 521, 523 (1977). Interpreting NRS 40.655 as superseding NRCP 68 would diminish and compromise our power to create rules of procedure; therefore, we do not adopt this interpretation.

[13]*Dillard Department Stores v. Beckwith*, 115 Nev. 372, 382, 989 P.2d 882, 888 (1999); *Lentz v. I.D.S. Financial Services*, 111 Nev. 306, 308, 890 P.2d 783, 785 (1995) ("[T]he purpose of NRCP 68 is to encourage litigants who receive offers of judgment to settle their lawsuits by forcing the offeree to 'balance the uncertainty of receiving a more favorable judgment against the risk of receiving a less favorable judgment and being forced to pay the offeror's costs and attorney's fees.'" (quoting *Bergmann v. Boyce*, 109 Nev. 670, 678, 856 P.2d 560, 565 (1993))).

[14]*General Motors v. Jackson*, 111 Nev. 1026, 1029, 900 P.2d 345, 348 (1995). The Albioses also argue that the offers of judgment are invalid because they did not include all of the damages that a successful constructional defect

party is foreclosed from recovering costs and fees under the penalty provisions of NRCP 68 and NRS 17.115,[15] that party is likewise foreclosed from recovering costs and fees under NRS 40.655.[16]

### Validity of Horizon's offers of judgment

Next, we must determine whether Horizon's offers of judgment were valid and, thus, precluded the Albioses from recovering attorney fees if their verdict was less favorable than Horizon's offers of judgment. The Albioses argue that Horizon's offers of judgment were invalid to trigger the penalty provisions of NRCP 68 and NRS 17.115 because the offers were made to both plaintiffs but were not apportioned among them.[17] We disagree.[18]

---

claimant is entitled to recover under NRS 40.655, the most important being prejudgment interest. However, the Albioses failed to raise this issue below, and therefore, we do not consider this issue on appeal. *Lentz*, 111 Nev. at 308 n.2, 890 P.2d at 785 n.2; *Montesano v. Donrey Media Group*, 99 Nev. 644, 650 n.5, 668 P.2d 1081, 1085 n.5 (1983).

[15]Additionally, although not applicable in this action, the Legislature amended NRS Chapter 40 in 2003 to address offers of judgment. NRS 40.650(4) now provides that ''[n]othing in this section prohibits an offer of judgment pursuant to Rule 68 of the Nevada Rules of Civil Procedure or NRS 17.115 if the offer of judgment includes all damages to which the claimant is entitled pursuant to NRS 40.655.'' We have said that ''[w]here a former statute is amended, or a doubtful interpretation of a former statute rendered certain by subsequent legislation, it has been held that such [an] amendment is persuasive evidence of what the Legislature intended by the first statute.'' *Sheriff v. Smith*, 91 Nev. 729, 734, 542 P.2d 440, 443 (1975); *accord Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 580-81, 97 P.3d 1132, 1135-36 (2004). Although this statute has only a prospective effect and is inapplicable here, *Nevada Power v. Metropolitan Development Co.*, 104 Nev. 684, 686, 765 P.2d 1162, 1163 (1988), the amendment demonstrates that our interpretation of the interrelation between NRS 40.655, NRCP 68, and NRS 17.115 comports with legislative intent.

[16]*See Bowyer v. Taack*, 107 Nev. 625, 627, 817 P.2d 1176, 1177 (1991) (holding similarly where appellant claimed that she was entitled to recover attorney fees under NRS 18.010, even though NRCP 68(f) and NRS 17.115(4) foreclosed such a recovery), *overruled in part on other grounds by McCrary v. Bianco*, 122 Nev. 102, 131 P.3d 573 (2006).

[17]The district court did not address whether Horizon's offers of judgment were invalid because they were joint, unapportioned offers. Instead, the district court mistakenly addressed the validity of the offers of judgment under *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983). *Beattie* is inapplicable to determine whether an offer is valid to trigger the penalty provisions of NRCP 68 and NRS 17.115. Instead, *Beattie* applies after a district court finds that an offeree failed to obtain a more favorable jury verdict than the offer tendered and merely guides the district court's discretion to award attorney fees.

[18]Horizon relies on our decision in *Uniroyal Goodrich Tire v. Mercer*, 111 Nev. 318, 890 P.2d 785 (1995), *superseded by statute as stated in RTTC Com-*

The pertinent provisions of NRCP 68(c)(3) state,

> An offer made to multiple plaintiffs will invoke the penalties of this rule only if (A) the damages claimed by all the offeree plaintiffs are solely derivative, such as that the damages claimed by some offerees are entirely derivative of an injury to the others or that the damages claimed by all offerees are derivative of an injury to another, and (B) the same entity, person or group is authorized to decide whether to settle the claims of the offerees.

Under NRS 17.115, unapportioned offers made to multiple plaintiffs are not considered valid to mandate the attorney fees and costs penalties unless certain requirements are met. As spelled out in NRS 17.115(9), those sanctions do not apply to:

> (b) An offer of judgment made to multiple plaintiffs unless the same person is authorized to decide whether to settle the claims of all the plaintiffs to whom the offer is made *and*:
>
> (1) There is a single common theory of liability claimed by all the plaintiffs to whom the offer is made;
>
> (2) The damages claimed by one or more of the plaintiffs to whom the offer is made are entirely derivative of an injury to the remaining plaintiffs to whom the offer is made; *or*
>
> (3) The damages claimed by all the plaintiffs to whom the offer is made are entirely derivative of an injury to another person.

(Emphases added.)

The Albioses argue that the offers of judgment do not fall within the scope of NRCP 68 and NRS 17.115 because neither spouse sustained damages that are entirely derivative of an injury to the other spouse, nor did they sustain damages that are entirely derivative of an injury to another person. Additionally, the Albioses argue that Horizon must also demonstrate that the same entity, person, or group was allowed to settle the case.

Addressing first the derivative damages argument, the Albioses are correct that under NRCP 68, an unapportioned offer of judgment made to multiple plaintiffs is invalid unless the damages are

---

*munications v. Saratoga Flier*, 121 Nev. 34, 110 P.3d 24 (2005), and argues that offers of judgment need not be apportioned because the Albioses had a unity of interest, had jointly sued Horizon, had the same attorney, the same damages, and made their own joint offer of judgment. Horizon's reliance on *Uniroyal* is misplaced. *Uniroyal* was decided before we amended NRCP 68 in 1998 and before the Legislature amended NRS 17.115 in 1999. NRCP 68 (replaced effective October 27, 1998); 1999 Nev. Stat., ch. 258, §§ 1-3, at 1102-05 (amending NRS 17.115 effective May 24, 1999); *RTTC Communications*, 121 Nev. at 41-42, 110 P.3d at 29. Thus, we follow the requirements of NRCP 68 and NRS 17.115, and not *Uniroyal* when determining whether an unapportioned offer of judgment is valid.

derivative; here the Albioses' damages are not derivative. NRS 17.115 has the same requirement, albeit worded slightly differently. However, NRS 17.115 includes an alternative requirement that can be met instead of the derivative damages requirement—an unapportioned offer is also proper if there is a single common theory of liability claimed by all plaintiffs. This language does not appear in NRCP 68.

"[A]pparent conflicts between a court rule and a statutory provision should be harmonized and both should be given effect if possible."[19] We have previously addressed differences between NRCP 68 and NRS 17.115 and concluded that when NRCP 68 is silent with respect to something addressed under NRS 17.115, "it should be interpreted harmoniously with the more specific provisions and legislative policy of NRS 17.115."[20] Additionally, when possible, we construe statutes such that no part of the statute is turned to mere surplusage.[21]

Under NRCP 68, the defendant must show that the plaintiffs' damages are derivative. NRS 17.115, on the other hand, allows the defendant to show that there is a single common theory of liability *or* that the damages are in some way derivative. To construe NRS 17.115 as requiring Horizon to show that the injuries were derivative would render NRS 17.115(9)(b)(1) mere surplusage. Therefore, reading NRCP 68 and NRS 17.115 in harmony and giving effect to both, we conclude that Horizon was required to demonstrate either that the Albioses asserted a single common theory of liability against Horizon *or* that the damages were derivative. Because the Albioses jointly sued Horizon under the same constructional defect liability theory, Horizon satisfied the first requirement necessary for a valid offer of judgment involving multiple plaintiffs.

Horizon was also required to demonstrate that the same person was authorized to decide whether to settle the claims of all plaintiffs. The Albioses owned their property in joint tenancy, and they argue that, therefore, each had a separate interest in the property and that one joint tenant cannot act on behalf of the other joint tenant in controlling the other's interest.[22] However, if it can be shown

---

[19]*Bowyer*, 107 Nev. at 627-28, 817 P.2d at 1178.

[20]*Id.* at 628, 817 P.2d at 1178.

[21]*Paramount Ins. v. Rayson & Smitley*, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970).

[22]*See Fick v. Fick*, 109 Nev. 458, 461, 851 P.2d 445, 448 (1993) (stating that married couple may hold property as joint tenants and that property so

that one plaintiff is authorized to decide whether to settle the claims for all plaintiffs, joint tenancy will not preclude service of an unapportioned offer of judgment under NRCP 68 and NRS 17.115.

In situations such as the case at bar, when a married couple jointly brings a claim under the same common theory of liability, concerning jointly owned property, we hold that as a matter of law, one plaintiff spouse is presumed to have authority to settle the claims for both plaintiff spouses. Thus, Horizon has satisfied the second requirement for serving an unapportioned offer, and its offers to the Albioses were valid.[23]

Accordingly, we must next examine whether the Albioses' verdict exceeded Horizon's offers.

## Successive offers of judgment

Horizon served the Albioses with three successive offers of judgment, all of which the Albioses rejected. Horizon argues that its second and third offers of judgment were more favorable than the Albioses' verdict and, therefore, the Albioses are not entitled to attorney fees under NRCP 68 and NRS 17.115. We have never addressed whether successive offers of judgment extinguish previous offers of judgment or whether all offers of judgment control.[24] Thus, before we can compare the Albioses' verdict to Horizon's offers, we must first decide which of Horizon's offers is controlling.

---

held is separate property of each spouse); *see also Forrest v. Forrest*, 99 Nev. 602, 605, 668 P.2d 275, 277 (1983) (similar).

[23]We view this case as distinguishable from our decision in *Lentz v. I.D.S. Financial Services*, 111 Nev. 306, 890 P.2d 783 (1995). In *Lentz*, we held an offer of judgment invalid because, although apportioned between the spouses, the offer was impliedly conditioned upon both spouses' acceptance. *Id.* at 308-09, 890 P.2d at 784-85. However, *Lentz* was decided prior to the amendment of NRCP 68 and NRS 17.115 and, thus, did not involve the same factors for unapportioned offers as currently exist.

[24]Although this court has never directly addressed this issue, in *Pombo v. Nevada Apartment Ass'n*, 113 Nev. 559, 563, 938 P.2d 725, 728 (1997), we concluded that a new, valid offer under NRCP 68 filed four days after a previous, invalid offer, was controlling for purposes of NRCP 68. However, our decision in *Pombo* was partially shaped by the fact that the new, valid offer was suggestive that the offeror desired to correct the defects of the first offer. *Id.* Seemingly contrary to *Pombo*, we concluded in *Nava v. Dist. Ct.*, 118 Nev. 396, 398, 46 P.3d 60, 62 (2002), that an offer of judgment is irrevocable and cannot be withdrawn or modified within the ten-day acceptance period of NRCP 68 and NRS 17.115. This contradiction further supports that *Pombo* was primarily based on the invalidity of the first offer. Laura T. Kidwell, J.D., *Construction of State Offer of Judgment Rule—Issues Concerning Revocation and Succession*, 116 A.L.R. 5th 433, § 16 (2004). Thus, *Pombo*, although supportive of our position today, is not wholly controlling and cannot be extended beyond situations where a successive offer of judgment is served to correct a prior, invalid offer of judgment.

Both NRCP 68 and NRS 17.115 contain a provision that allows a party to serve more than one offer of judgment.[25] However, both are silent regarding the effect of successive offers.[26] Other states are split on whether successive offers of judgment extinguish previous offers of judgment or whether all offers served are controlling. Generally, it is a policy decision. After examining both positions, we conclude the better rule is that the most recent offer of judgment extinguishes all prior offers of judgment.

California adopts the position that successive offers extinguish previous offers. California's theory is that the "process of settlement and compromise is a contractual one, and the applicable principles are those relating to contracts in general."[27] The general contractual rule on offers is that "any new offer communicated prior to a valid acceptance of a previous offer, extinguishes and replaces the prior one."[28] Further,

> there is an evolutionary aspect to lawsuits and the law, in fairness, must allow the parties the opportunity to review their respective positions as the lawsuit matures. The litigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial.[29]

Most importantly, California concludes that the legislative purpose of offers of judgment statutes "is generally better served by a bright line rule in which the parties know that any judgment will be measured against a single valid statutory offer—i.e., the statutory offer most recently rejected—regardless of offers made earlier in the litigation."[30] And interpreting the offer of judgment rule otherwise encourages a party to

> maintain a higher settlement demand on the eve of trial and refuse to settle a case that should otherwise be settled if the [party] finds comfort in the knowledge that, even if [the party] receives an award less than his or her last demand, [the party] might still enjoy the cost reimbursement benefits . . . so long as the award exceeded a lower demand made by the [party] some time during the course of the litigation. . . . "Rolling

---

[25]NRCP 68(e); NRS 17.115(3).

[26]NRS 17.115's legislative history is unenlightening on whether successive offers extinguish previous offers.

[27]*Distefano v. Hall*, 69 Cal. Rptr. 691, 695 (Ct. App. 1968).

[28]*Id.*

[29]*Wilson v. Wal-Mart Stores, Inc.*, 85 Cal. Rptr. 2d 4, 9 (Ct. App. 1999).

[30]*Id.*

the dice'' then becomes somewhat less risky and we note that lawsuits are not often settled by *reducing* the risk of trial.[31]

Notably, California's offer of judgment rule, California Code of Civil Procedure section 998, contains two important differences from NRCP 68 and NRS 17.115. First, section 998 does not expressly permit successive offers of judgment. Second, California has interpreted, again under general contract principles, that section 998 offers are revocable prior to acceptance.[32] Contrary to section 998, NRCP 68 and NRS 17.115 textually provide for successive offers and, converse to general contract principles, offers of judgment are irrevocable in Nevada.[33] These differences notwithstanding, we conclude that California's position regarding successive offers better effectuates the purpose of offers of judgment.

We note that other courts conclude that successive offers of judgment do not extinguish previous offers, reasoning that once a plaintiff rejects an offer within the statutory time period, the defendant has acquired a statutory right to recover attorney fees and costs if the plaintiff does not obtain a more favorable verdict.[34] Although a valid position, California's policy lends greater finality to the offer-of-judgment process and is more easily applied. Additionally, we reject, for two reasons, other courts' reliance on FRCP 68's advisory committee note,[35] which states that all offers remain valid, so that settlements are encouraged. First, our Rule 68 differs substantially from the federal rule. Second, as previously discussed, we conclude that reducing the risk of trial by allowing multiple offers of judgment to control does not encourage settlement.

Thus, we adopt the reasoning of our sister state California and hold that the most recent offer of judgment extinguishes all prior offers of judgment and is controlling for purposes of NRCP 68 and NRS 17.115.[36] Therefore, Horizon's third offer of judgment in the

---

[31]*Id.*

[32]*T.M. Cobb Co., Inc. v. Superior Court*, 682 P.2d 338, 340-41 (Cal. 1984). Important in this decision, however, was the fact that because section 998 was silent with regard to irrevocability, ''the general rule that offers may be revoked prior to acceptance should apply.'' *Id.*

[33]*Nava v. Dist. Ct.*, 118 Nev. 396, 398, 46 P.3d 60, 62 (2002).

[34]*Kaufman v. Smith*, 693 So. 2d 133, 134 (Fla. Dist. Ct. App. 1997).

[35]*E.g., Dickenson v. Regent of Albuquerque, Ltd.*, 815 P.2d 658, 659 (N.M. Ct. App. 1991) (determining that, based on the comments to FRCP 68, defendants were entitled to their costs from the date of their first offer of judgment, rather than their second offer of judgment).

[36]Our holding today applies only to the post-trial determination of which offer is controlling for purposes of whether a party received a more favorable verdict at trial. It does not change or affect the fact that offers of judgment are irrevocable within the statutory ten-day period.

amount of $100,000, exclusive of attorney fees and costs, is controlling.

The Albioses were awarded $100,000, reduced by 5 percent for comparative negligence, resulting in a judgment of $95,000. Although this amount does not exceed Horizon's third offer of judgment, we recently held that "pre-offer prejudgment interest must be added to the judgment when comparing it to the offer of judgment, unless the offeror clearly intended to exclude prejudgment interest from its offer."[37] When, as here, the offer is silent regarding prejudgment interest and the intent of the offeror cannot be determined, we will presume that the offer includes prejudgment interest.[38] Although Horizon's offer excluded attorney fees and costs, this exclusion was insufficient to alert the Albioses to the fact that prejudgment interest would also be excluded. However, because Horizon expressly excluded attorney fees and costs, only pre-offer prejudgment interest awarded on the $95,000 damages awarded can be considered.

Thus, when $12,983.46 in pre-offer prejudgment interest[39] is added to the $95,000 verdict, the Albioses' trial recovery was more favorable than Horizon's third offer of judgment. As such, the Albioses were entitled to their attorney fees and costs.[40]

*Award of attorney fees*

The Albioses argue that the district court abused its discretion when awarding them attorney fees because the actual fees they incurred were much higher than the amount awarded by the district court. We agree.

We must first address the fact that the Albioses sought and were awarded attorney fees under NRS 40.655 through a post-trial mo-

---

[37]*State Drywall v. Rhodes Design & Dev.*, 122 Nev. 111, 118, 127 P.3d 1082, 1087 (2006); *see also McCrary v. Bianco*, 122 Nev. 102, 109, 131 P.3d 573, 577-78 (2006).

[38]*State Drywall*, 122 Nev. at 119, 127 P.3d at 1087.

[39]This figure was calculated solely for purposes of whether the Albioses recovered a more favorable verdict and does not represent the actual prejudgment interest the Albioses are entitled to. This figure represents prejudgment interest calculated at 6.25 percent (applicable period of interest is January 1, 2003, which is the period immediately preceding the judgment), for 798 days—the period between July 13, 2000 (service of the summons and complaint) and September 19, 2002 (service of Horizon's third offer of judgment).

[40]Although the district court's reasoning in awarding the Albioses attorney fees and costs was erroneous, we will affirm the decision of the district court when it reaches the correct result, even if based on the wrong reason. *Sengel v. IGT*, 116 Nev. 565, 570, 2 P.3d 258, 261 (2000).

tion. Under NRS 40.655, attorney fees are an item of damages. Generally, "quantities of damages are determined by the jury . . . [and] claimants who fail to submit the attorney fees issue to the jury, and instead simply request fees in a post-trial motion, waive their right to those fees."[41] Additionally, attorney fees requested as an element of damages must be specially pleaded and proved "just as any other element of damages."[42]

However, we recently stated in *Shuette v. Beazer Homes Holdings Corp.*[43] that recovery of attorney fees under NRS 40.655 is distinguishable from the limited special damages exception. Under NRS 40.655(1), attorney fees are recoverable "to the extent proximately caused by a constructional defect." Thus, we held that when "a jury determines that the claimant is entitled to recover damages proximately caused by a constructional defect, a court can presume that the claimant is entitled to the recovery of attorney fees, whether or not the jury verdict explicitly so states."[44] We then stated that the calculation of attorney fees is a matter traditionally reserved to the trial court.[45] Thus, although the Albioses filed their request for attorney fees in a post-trial motion, under *Shuette*, this was proper and does not preclude the Albioses from recovering attorney fees.

When determining the amount of fees to award, the district court has great discretion, to be " 'tempered only by reason and fairness.' "[46] The district court is not limited in its approach for determining the amount of attorney fees to award, but it must conduct its analysis in light of the *Brunzell v. Golden Gate National Bank*[47] factors, "namely, the advocate's professional qualities, the nature of the litigation, the work performed, and the result."[48]

The district court abused its discretion by failing to consider the *Brunzell* factors in awarding the Albioses only $50,000 in attorney fees. The district court commented that the Albioses' counsel had performed admirably in litigating the case. The district court also

---

[41]*Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 861, 124 P.3d 530, 547 (2005).

[42]*Sandy Valley Assocs. v. Sky Ranch Estates*, 117 Nev. 948, 956, 35 P.3d 964, 969 (2001).

[43]121 Nev. 837, 124 P.3d 530.

[44]*Id.* at 863, 124 P.3d at 548.

[45]*Id.*

[46]*Id.* at 864, 124 P.3d at 548-49 (quoting *University of Nevada v. Tarkanian*, 110 Nev. 581, 591, 879 P.2d 1180, 1186 (1994)).

[47]85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969).

[48]*Shuette*, 121 Nev. at 865, 124 P.3d at 549.

noted the difficulty of the case, considering that it was the first constructional defect case to be brought by a single homeowner. It noted how remarkable it was that each side had charged a similar amount in fees and concluded that the fees were fair considering the time expended on litigation. Finally, the Albioses' counsel produced a favorable result. Although the district court made those observations, it failed to consider them when determining the amount of attorney fees to award, setting an amount far below that actually incurred. The district court abused its discretion, and we therefore reverse that portion of the district court's judgment that pertains to attorney fees.

### Prejudgment interest

#### Award of prejudgment interest on entire verdict

Horizon argues that the district court abused its discretion by awarding the Albioses prejudgment interest on the entire verdict because the general verdict form used did not distinguish between past and future damages, and the Albioses did not object to the use of this form. We review challenges to prejudgment interest awards for error.[49] Under NRS 17.130(2), "the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages." The general rule is that it is error to award prejudgment interest on an entire verdict if "it is impossible to determine what part of the verdict represented past damages."[50] But when there is nothing in the record to suggest that future damages were included in the verdict, prejudgment interest on the entire verdict is allowed.[51]

Horizon argues that the future damages the Albioses sought included move-out expenses such as motel rooms, food expenses, moving expenses, storage expenses, and kennel expenses for their dogs. The Albioses argue that these damages are not future damages but, instead, stem from past injuries that have already occurred but have yet to be cured. We agree.

---

[49]*See Hazelwood v. Harrah's*, 109 Nev. 1005, 1011, 862 P.2d 1189, 1192 (1993) (stating that "[i]t is error for a trial court to award prejudgment interest for the entire amount of the verdict when it is impossible to determine what part of the verdict represented past damages"), *overruled on other grounds by Vinci v. Las Vegas Sands*, 115 Nev. 243, 984 P.2d 750 (1999).

[50]*Id.*; *see also Stickler v. Quilici*, 98 Nev. 595, 597, 655 P.2d 527, 528 (1982) (concluding, in the context of a personal injury case, that the jury's general verdict was insufficient for the court to determine what portion of the verdict was properly attributed to past damages).

[51]*Farmers Home Mutual Ins. v. Fiscus*, 102 Nev. 371, 375, 725 P.2d 234, 236 (1986).

Our recent decision in *Shuette* provides analytical assistance. There, we stated that an award of prejudgment interest on an entire verdict in a constructional defect case could be proper because "the award represent[ed] only past damages[ ] . . . because the damages occurred when the homes were built, regardless of when the homeowners actually made or will make necessary repairs."[52] Further, we opined that "unexpended costs to repair constructional defects, which necessarily occurred early on, should be treated as past damages, even though the defects will be repaired in the future. Thus, prejudgment interest should be applied to past 'abatement' damages."[53] To repair a home's constructional defects, it will often be necessary for the homeowners to first move out of the home and into temporary housing. Thus, move-out expenses, such as those sought by the Albioses, are a part of the abatement damages. Although the homeowners might not have yet repaired the home and, thus, not yet incurred move-out expenses, these damages "should be treated as past damages." The district court did not err in awarding the Albioses prejudgment interest on the entire verdict.

### Prejudgment interest on costs and attorney fees

The district court denied the Albioses prejudgment interest on their costs and attorney fees. We conclude that the denial of both was error. Under the plain language of NRS 17.130(1), prejudgment interest is recoverable on judgments awarding costs.[54] Prejudgment interest runs on costs from the time when the costs were incurred. Therefore, the recovering party must prove when the costs were incurred and, if the party fails to do so, interest on the costs is awarded only from date of the judgment.[55] As such, the Albioses are entitled to prejudgment interest on their costs but, on remand, the Albioses are required to prove when their costs were incurred. Should they fail to do so, they are entitled to interest from the date of the judgment only.

The parties do not raise an issue regarding whether the Albioses were entitled to prejudgment interest on attorney fees. However, we conclude that the failure to award prejudgment interest on attorney fees in this case was plain error, and we will address this issue sua sponte.[56]

[52]*Shuette*, 121 Nev. at 866, 124 P.3d at 550.

[53]*Id.*

[54]*Gibellini v. Klindt*, 110 Nev. 1201, 1209, 885 P.2d 540, 544 (1994).

[55]*Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1355-56, 971 P.2d 383, 387-88 (1998); *Gibellini*, 110 Nev. at 1209, 885 P.2d at 544.

[56]*See McNair v. Rivera*, 110 Nev. 463, 468 n.6, 874 P.2d 1240, 1244 n.6 (1994); *Bradley v. Romeo*, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986);

This court has not yet addressed whether prejudgment interest is recoverable on attorney fees when attorney fees are awarded as an element of damages, as in this case. The plain language of NRS 17.130(1) states that prejudgment interest is awarded on judgments "for any debt, damages or costs." Thus, when attorney fees are awarded as damages, they fall within the plain language of NRS 17.130(1). Accordingly, we hold that when attorney fees are awarded as an element of damages, the prevailing party is entitled to recover prejudgment interest on the attorney fees. As the attorney fees are awarded as an element of past damages, attorney fees draw interest from the time of service of the summons and complaint, as specified in NRS 17.130(2). Therefore, we reverse that portion of the district court's decision denying the Albioses' prejudgment interest on costs and attorney fees and remand this matter for proceedings consistent with our decision.

### NRS 99.040(1) versus NRS 17.115

The Albioses also argue that prejudgment interest should have been awarded under NRS 99.040(1), which provides the basis for an award of prejudgment interest in contract actions. According to the Albioses, they are entitled to interest from the time of the breach instead of from the time the complaint was served. We disagree.

The Albioses asserted two theories of liability—breach of contract and negligence. In reaching its general verdict, the jury did not differentiate between the two claims, but found that the Albioses had 5 percent comparative fault and reduced the verdict accordingly. This suggests that the jury based its award on negligence rather than on the breach of contract claim. Further, NRS 99.040(1) is inapplicable when "[t]he judgments awarded to [the plaintiff] have nothing to do with any amounts 'due' under the terms of the . . . contract."[57] Here, because the jury's verdict reduced the award for comparative fault, we conclude that the judgment awarded was unrelated to the Albioses' contract claims. Thus, the district court properly awarded prejudgment interest under NRS 17.130.

However, Horizon argues that the district court erred by calculating the prejudgment interest at a flat rate of 11.5 percent per year. In determining the applicable rate, district courts are to use the base prime interest rate "as ascertained by the commissioner of

*Western Indus., Inc. v. General Ins. Co.*, 91 Nev. 222, 229-30, 533 P.2d 473, 478 (1975).

[57]*BHY Trucking v. Hicks*, 102 Nev. 331, 333, 720 P.2d 1229, 1231 (1986).

Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent."[58] Under NRS 17.130(2), prejudgment interest is calculated at "the single rate in effect on the date of judgment."[59] Therefore, although the district court correctly calculated the interest at a fixed rate, it erred by calculating the rate in effect when the summons and complaint were served, because it should have used the rate in effect at the date of the judgment. Accordingly, we reverse and remand the prejudgment interest award for recalculation.

*Award of costs*

The Albioses argue that the district court improperly refused to award all their costs. The court awarded them $179,985 in costs, but they sought $192,708 in costs. They argue that the district court should have awarded them costs for facsimile transmissions, out-of-pocket paralegal expenses, postage, hiring a special runner, and other items.

Under NRS 18.020, the prevailing party in an action alleging more than $2,500 in damages is entitled to recover all costs as a matter of right.[60] Nevertheless, we have noted that "[t]he determination of which expenses are allowable as costs is within the sound discretion of the trial court."[61] Further, we have cautioned that because statutes permitting costs are in derogation of the common law, they should be strictly construed.[62] It was well within the district court's discretion to find that certain of the Albioses' costs were not allowable, and we conclude that the district court did not abuse that discretion in its costs award.[63]

### CONCLUSION

For the above reasons, we affirm the decision of the district court regarding the Albioses' entitlement to attorney fees and costs, but we reverse in part and remand for a recalculation of attorney fees and prejudgment interest.

BECKER, MAUPIN, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[58]NRS 17.130(2).

[59]*Lee v. Ball*, 121 Nev. 391, 396, 116 P.3d 64, 67 (2005).

[60]*Bergmann v. Boyce*, 109 Nev. 670, 679, 856 P.2d 560, 565 (1993) (citing NRS 18.020(3)).

[61]*Id.* at 679, 856 P.2d at 565-66.

[62]*Id.*

[63]Additionally, upon review of the record and consideration of the parties' arguments, we conclude that the district court likewise did not abuse its discretion by denying the Albioses' request for post-trial attorney fees and costs.