J. CHRISTOPHER STUHMER, INC., Appellant, *v.* CEN-
TAUR SCULPTURE GALLERIES, LTD., INC., a Cal-
ifornia Corporation, and CENTAUR SCULPTURE
GALLERIES, LTD., INC., a Nevada Corporation,
Respondents.

No. 24323

March 30, 1994                                    871 P.2d 327

[Rehearing denied June 16, 1994; rehearing granted September 14, 1994]

*John M. Sacco,* Las Vegas, for Appellant.

*Albert D. Massi, Ltd.* and *Allen A. Cap,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

Appellant J. Christopher Stuhmer, Inc. (Stuhmer Inc.) entered into a written contract with Centaur Galleries, Ltd., Inc. (Centaur) for the construction of a retail art gallery in the Horton Plaza in San Diego, California. The parties agreed that Pacific Coast Builders (PCB) would do the construction work, while Stuhmer Inc. would supervise the project. When Centaur failed to pay in full, Stuhmer Inc. filed suit seeking $51,687.89 for money due under the contract or alternatively, under the theory of quantum meruit. The district court found that Stuhmer Inc. had contracted with Centaur's California corporation and had assigned all its rights under the contract to PCB, and accordingly denied Stuhmer Inc.'s request for damages. We reverse and remand to the district court with instructions to enter judgment for Stuhmer Inc. against Centaur's Nevada corporation in the amount of $51,587.89.

## FACTS

Stuhmer Inc. built the Centaur Sculpture Galleries retail store in The Fashion Show Mall in Las Vegas. After the completion of this gallery Richard Perry (Perry) of Centaur contacted Stuhmer Inc., requesting that Stuhmer Inc. construct the new Centaur gallery in San Diego based on the same design used in the Las Vegas construction. Because Stuhmer Inc. was not licensed as a contractor in California the parties agreed that PCB, a California company owned by Stuhmer's brother, would perform the construction work, while Stuhmer Inc. would supervise the project. Stuhmer and his brother (Steve Stuhmer) verbally agreed that PCB would get a $20,000.00 flat fee for its services plus 50% of the profit on the project.

On October 18, 1988, Stuhmer Inc. and Centaur entered into a written construction contract for the amount of $268,140.90. Centaur's address was listed as 3200 Las Vegas Boulevard, Las Vegas, Nevada 89109, throughout the contract, and Perry's signature appeared in the block entitled "owner." The project began.

Centaur made a payment to Stuhmer Inc. of $80,442.00 when the contract was signed, and subsequently Stuhmer Inc. invoiced Centaur Galleries in Las Vegas on a number of occasions and was paid the additional sum of $152,724.09. Stuhmer Inc. paid PCB and answered questions from Perry regarding the project. Stuhmer visited the San Diego job site during the design process,

prior to construction commencing, and when the construction was about 75% completed. PCB had its own crew on the job during construction and also hired other subcontractors and tradesmen to work on the project. PCB submitted all of its subcontractor and tradesmen bills to Stuhmer Inc., who directly paid these laborers.

After the construction was completed in February of 1989, Perry continued to communicate directly with Stuhmer Inc. in Las Vegas regarding items that he claimed needed to be completed, and regarding construction extras that Stuhmer Inc. provided at a cost of $10,113.89. Additionally, Centaur's attorneys communicated with Stuhmer Inc. in writing regarding the project.

On November 2, 1990, Stuhmer filed suit against Centaur-Nevada seeking $51,687.89 in damages for money due under the contract, or for the reasonable value of services and materials provided under the theory of quantum meruit.[1] Pursuant to a bench trial, the district court found that Stuhmer Inc. had entered into the contract with Centaur's California corporation (Centaur-California) rather than Centaur's Nevada corporation (Centaur-Nevada), and that Stuhmer Inc. had assigned its interest in the contract to PCB. The district court therefore concluded that Stuhmer Inc. lacked standing to claim contract damages, and entered judgment in favor of Centaur-Nevada and Centaur-California, denying Stuhmer Inc.'s request for damages. This appeal followed.

## DISCUSSION

*Whether the district court erroneously found that the contract was between Stuhmer Inc. and Centaur-California.*

Centaur-California has closed its San Diego gallery and its corporate operations, and is apparently without any assets. Centaur, in an attempt to escape paying a judgment, asserts that

---

[1] Stuhmer Inc. arrived at this figure by adding $10,113.89 for construction extras to the contract price of $268,140.00 and deducting the payments received from Centaur ($233,166.00) to get $45,087.89. Stuhmer Inc. then added the approximate balance due ($6,500.00) on an art trade-out which never occurred. Stuhmer Inc. has made an error in computation, as these figures total $51,587.89—the figure appearing in the recap of Patricia Cava's (Cava) testimony contained in Appellant's Appendix.

This figure of $51,587.89 was verified at trial. Cava, Stuhmer Inc.'s administrative assistant and office manager, testified that based on the office balance sheets, $51,587.89 was the balance due under the contract. Steve Stuhmer testified that $10,113.89 was the cost of the construction extras performed by PCB, and that this price was reasonable for the work done. Stuhmer testified that $6,500.00 was the amount due for the art trade-out that never occurred.

Centaur-California rather than Centaur-Nevada contracted with Stuhmer Inc.

It is undisputed that the wording of the contract did not indicate whether Centaur was a Nevada corporation or a California corporation. However, the block entitled "owner" and signed by Perry on behalf of Centaur lists a Las Vegas address that is the principal place of business of Centaur-Nevada.

In reaching the conclusion that Stuhmer Inc. contracted with Centaur-California, the district court found that the term "owner" in the contract referred to the tenant in the lease of the premises in San Diego, which was Centaur-California. These lease agreements were plaintiff's Exhibits 9, 10, and 11, which were never offered or admitted into evidence and accordingly, the district court erred in relying on them.

The district court further found that the fact that all payments to Stuhmer Inc. were made from a separate bank account maintained by Centaur-California supported its conclusion.[2] Though there is evidence supporting this factual finding, the district court erred in failing to consider Stuhmer's unrefuted testimony regarding the circumstances surrounding the contract.

The best approach for courts to use in interpreting a contract that is ambiguous is to "delve beyond the express terms of a written contract" and "examine the circumstances surrounding the parties' agreement in order to determine the true mutual intentions of the parties." Hilton Hotels v. Butch Lewis Productions, 107 Nev. 226, 231, 808 P.2d 919, 921 (1991). This includes not only the circumstances surrounding the execution of the contract, but also subsequent acts and declarations of the parties. Transwestern Leasing v. Corrao Construction Co., 98 Nev. 445, 447, 652 P.2d 1181, 1183 (1982).

Stuhmer's unrefuted testimony regarding the circumstances of the agreement clearly shows that Stuhmer Inc. contracted with Centaur-Nevada.[3] Stuhmer testified that it was his understanding that he was contracting with the same entity that he had previously dealt with when building the Centaur Sculpture Galleries in Las Vegas, and that the first time he heard of Centaur-California was after the subject litigation was filed. *See* Water Rights v. North Colorado Water Conservancy District, 677 P.2d 320, 327 (Colo. 1984) ("It is also well-established that the parties' construction of a contract before a dispute arises is a particularly persuasive aid in determining the true meaning of the agreement."). The correspondence to Stuhmer Inc. not only from

---

[2]Stuhmer testified that he never saw these checks, as his office manager was responsible for depositing them.

[3]Perry, who signed the contract on behalf of Centaur, failed to testify at trial. Notably, Centaur failed to present any witnesses on its behalf.

Perry, but also from Centaur's attorneys prior to the institution of this lawsuit, never distinguished between a California and Nevada corporation. In fact, a letter from Mr. Todd Bingham (Bingham), Centaur-*Nevada's* District Manager states:

> *This company* retained Mr. Stuhmer's services to construct *a second gallery location* in San Diego's Horton Plaza. . . .

(Emphasis added.) The plain meaning of this language is that Centaur-*Nevada* hired Stuhmer Inc.

The district court further concluded that "the fact that Centaur-California, Inc. was the contracting party is also supported by the fact that Stuhmer amended its complaint . . . after first filing against *only* Centaur California, Inc." (Emphasis added.) This statement is factually erroneous. The original complaint in this case was filed against Centaur-Nevada, as Stuhmer had never heard of Centaur-California's existence at that point in time. The complaint was changed by stipulation of the parties to name Centaur-California only after Centaur's attorney informed Stuhmer Inc. that it had sued the wrong party. Following the discovery that Centaur-California had closed its gallery and its corporate operations, Stuhmer Inc. amended its complaint to name both Centaur-Nevada and Centaur-California.

The evidence clearly shows that Stuhmer Inc. believed it was contracting with Centaur-Nevada, and that Centaur's conduct at the time of the signing of the contract and throughout the relationship never indicated otherwise, until the institution of the present lawsuit. Therefore, we conclude that the district court erred in finding that Stuhmer Inc. contracted with Centaur-California rather than Centaur-Nevada.

*Whether the district court erred in concluding that Stuhmer Inc. assigned all of its rights and duties under the construction contract to PCB.*

The district court's conclusion that Stuhmer Inc. assigned all of its rights and duties under the construction contract to PCB, and therefore lacked standing to pursue this action, was based on a finding that "all of the work that was performed under the contract was performed by [PCB]. [PCB] obtained all of the permits and contracted with all of the subcontractors." The first part of this finding is clearly erroneous. The evidence shows while PCB completed the actual construction, Stuhmer Inc. administered the project and ensured that the design was correctly carried out. Stuhmer Inc. paid PCB, paid the subcontractors and materialmen, and answered questions from Perry. Additionally, Stuhmer visited the San Diego job site dur-

ing the design process, prior to the construction commencing, and when the construction was about 75% complete.

Moreover, the record reveals an absolute lack of evidence that a legal assignment took place. It is essential that in order for there to be a legal assignment of rights, the obligee must *manifest an intention* to transfer the right to another person. Restatement (Second) of Contracts § 324 at 37 (1979). Stuhmer Inc.'s ongoing involvement in the project is directly contrary to any manifestation of an intention to transfer its rights in the contract to PCB.

Additionally, Centaur's conduct prior to the institution of the present lawsuit is further evidence that there was no assignment. Upon execution of the contract Centaur paid $80,442.00 to Stuhmer Inc., then made four additional payments totalling approximately $135,145.00 to Stuhmer Inc. All correspondence from Centaur and its attorneys was directed to Stuhmer Inc., not to PCB. Also, a letter from Centaur's counsel to Stuhmer Inc. sent before this lawsuit stated that Stuhmer Inc.'s failure to resolve some problems in the construction would result immediately in an action being filed against Stuhmer Inc., not PCB.

Accordingly, the district court's finding that there was an assignment was error. Stuhmer Inc. is clearly the party in interest.[4]

## CONCLUSION

We conclude that based on Stuhmer Inc.'s unrefuted testimony and the evidence introduced at trial, Centaur-Nevada owes Stuhmer Inc. a total of $51,587.89 for the remainder due under the contract, the additional work done, and the amount due under the art trade-out that never occurred.[5] Accordingly, we reverse the decision of the district court and remand with instructions to enter judgment against Centaur-Nevada for Stuhmer Inc. in the amount of $51,587.89.

---

[4]Additionally, the district court's earlier denial of Centaur's motion to dismiss Stuhmer Inc.'s action pursuant to NRCP 17(a) supports our conclusion.

[5]Because we reach this conclusion, we do not address appellant's contentions that the district court erred in ruling that certain documents introduced by Stuhmer Inc. were inadmissible hearsay or that it erred by failing to award Stuhmer Inc. damages under the theory of quantum meruit.