138 Nev., Advance Opinion 13

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| HELIX ELECTRIC OF NEVADA, LLC, Appellant/Cross-Respondent, vs. APCO CONSTRUCTION, INC., A NEVADA CORPORATION, Respondent/Cross-Appellant. | No. 77320 |
| HELIX ELECTRIC OF NEVADA, LLC, Appellant/Cross-Respondent, vs. APCO CONSTRUCTION, INC., A NEVADA CORPORATION, Respondent/Cross-Appellant. | No. 80508 FILED MAR 24 2022 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Consolidated appeals and cross appeals from a district court judgment, certified as final pursuant to NRCP 54, and an award of attorney fees in a construction contract action. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed.*

Peel Brimley LLP and Eric B. Zimbelman and Richard L. Peel, Henderson, for Appellant/Cross-Respondent.

Fennemore Craig, P.C., and Christopher H. Byrd, Las Vegas; Fennemore Craig, P.C., and John Randall Jefferies, Phoenix, Arizona; Marquis Aurbach Coffing and Cody S. Mounteer, Las Vegas, for Respondent/Cross-Appellant.

22·09205

BEFORE THE SUPREME COURT, PARRAGUIRRE, C.J., STIGLICH and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

Pay-if-paid provisions enable a contractor to pay the subcontractor only if the contractor first receives payment from the project developer or owner. We clarified in *APCO Construction, Inc. v. Zitting Brothers Construction, Inc.*, 136 Nev. 569, 569, 473 P.3d 1021, 1024 (2020), that pay-if-paid provisions, while not void per se, are unenforceable if they run contrary to the rights and requirements established under NRS 624.624-.630. Here, the district court correctly concluded that a subcontract provision conditioning the payment of funds retained from earlier progress payments on the contractor first being paid was unenforceable. As the court further concluded, however, the unenforceability of the pay-if-paid condition did not also invalidate the remaining conditions precedent for obtaining the retention payment. We also agree with the district court that, as the subcontract was assigned after the original contractor terminated its contract with the developer, the subcontractor cannot obtain the unpaid retention from the original contractor. Finally, for the same reason, the contractor is not entitled to attorney fees under the subcontract for defending this action. We therefore affirm.

*FACTS AND PROCEDURAL HISTORY*

Gemstone Development West, Inc., sought to construct condominiums (the project) and hired respondent/cross-appellant APCO Construction, Inc., as its general contractor. APCO, in turn, subcontracted with appellant/cross-respondent Helix Electric of Nevada, LLC, at Gemstone's direction. While working under APCO, Helix billed

$5,131,207.11 and was paid $4,626,186.11. The difference, $505,021, was withheld in retention. Under section 3.8 of the subcontract, the retention would be released only upon the occurrence of several conditions, including Gemstone paying APCO, Helix completing its work on the project, Gemstone accepting that work, and Helix delivering close-out documents and claim releases to APCO.

Before the project's completion, the relationship between APCO and Gemstone deteriorated. Due to Gemstone's failures to issue certain progress payments to APCO, APCO issued stop work notices for the project multiple times. In so doing, APCO notified the subcontractors that while all work on the project was suspended due to its stop work notice, the parties were hoping to resolve the issues and, as the prime contract had not at that point been terminated, its subcontractors remained contractually bound to their subcontracts with APCO. Gemstone, in turn, claimed APCO was in breach of their agreement and threatened to terminate the prime contract if the breaches were not cured. Gemstone notified the subcontractors of the imminent termination of APCO and that it had already located a replacement general contractor so as to not delay the project. Soon thereafter, APCO notified the subcontractors that *it* intended to terminate the prime contract, explaining that when the general contractor terminates its contract, the subcontractors could also terminate their subcontracts. Ultimately, APCO left the project at the end of August, with both parties claiming that they had terminated the prime contract.[1]

---

[1]Gemstone and APCO disputed which of them terminated the prime contract, but ultimately, it was determined by the district court that APCO validly terminated the contract.

Gemstone thereafter notified the subcontractors that it had terminated the prime contract and that Camco Pacific Construction Company would act as construction manager in place of APCO. Helix did not terminate its subcontract with APCO but worked on the project under Camco from August to September 2008. Although Helix did not sign the subcontract Camco proposed, it billed Camco for its remaining fees, including the retention earned while Helix worked under APCO, as instructed by Gemstone. By December 15, 2008, however, the project lenders had withdrawn funding and work on the project was terminated. Camco paid Helix only a fraction of the amount it billed, which payment did not cover its retention.

APCO, Camco, and numerous subcontractors, including Helix, recorded mechanics' liens against the property, and the district court consolidated the multiple cases for purposes of discovery and trial. Pertinent here, the district court granted partial summary judgment in favor of Helix and other subcontractors, preventing APCO and Camco from asserting any defenses based on pay-if-paid agreements. The court relied on NRS 624.624 and *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 197 P.3d 1032 (2008), which generally make pay-if-paid agreements unenforceable and also require higher-tiered contractors to pay their lower-tiered subcontractors within the time periods set forth in NRS 624.624(1).

At trial, the district court found that the subcontracts had been assigned to Gemstone under the prime contract because Gemstone purported to terminate the prime contract and told the subcontractors that their contracts would be assumed by Camco; Camco began directing the project and receiving billings from the subcontractors, including for

retention; and Helix worked directly with Gemstone and Camco, not APCO, after APCO left the project. The district court dismissed Helix's claims for retention against APCO because section 3.8's preconditions for retention were not satisfied while APCO was the contractor, a fact that Helix admitted. Specifically, the district court faulted Helix for failing to show completion of the entire project and Gemstone's acceptance, Gemstone's final payment to APCO, and delivery of the close out documents and claim releases.

APCO requested attorney fees pursuant to section 18.5 of the subcontract, but the court awarded APCO attorney fees pursuant to NRCP 68, for less than APCO's requested amount. Helix appeals, challenging the denial of its claims for retention against APCO and the award of attorney fees under NRCP 68, and APCO cross-appeals, challenging the reduction of its requested attorney fees.

## DISCUSSION

Construction contracts commonly allow the owner or developer of a project to withhold a percentage of funds from progress payments to the contractor pending completion of the work. *See Pittsburg Unified Sch. Dist. v. S.J. Amoroso Constr. Co.*, 181 Cal. Rptr. 3d 694, 698-99 (Ct. App. 2014). Such "retainage" or "retention" helps reduce the risk of nonperformance and ensure the work is completed per the contract's terms. *Id.* In Nevada, the right to retain funds in this manner is governed by NRS 624.624(2)(a)(1), which authorizes a higher-tiered contractor, upon written notice, to withhold from any payment owed to the lower-tiered subcontractor "[a] retention amount . . . pursuant to the agreement, but the retention amount withheld must not exceed 5 [(formerly 10)] percent of the payment that is [otherwise] required."

In this appeal, Helix seeks its withheld retention from APCO, asserting that, even though the prime contract was terminated and APCO was required to leave the project, APCO never terminated the subcontract and thus owes Helix the amount withheld in retention.[2] Helix argues that the district court incorrectly determined that the subcontract retention provision's preconditions and the subcontract's purported assignment to Gemstone/Camco precluded payment. In addressing Helix's initial argument—that the section 3.8 preconditions are unenforceable, we first address whether our holding in *Zitting* applies to pay-if-paid provisions regarding retention. More specifically here, we determine whether, under *Zitting*, NRS 624.624-.630 invalidates section 3.8 of the subcontract in its entirety. We thereafter address whether Helix's subcontract was assigned, precluding Helix's argument that the retention is owed by APCO.

---

[2]Helix alternatively argues that the retention amount is due under a quantum meruit theory because its contract with APCO was unenforceable for failure to reach a meeting of the minds. But after reviewing the record, we conclude substantial evidence supports the district court's finding that the subcontract was enforceable. *Cf. May v. Anderson*, 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005) (explaining that we will defer to the district court's factual findings where they are based on substantial evidence).

Further, to the extent Helix asserts that APCO owes it "additional monies earned and unpaid after APCO left the [p]roject," the same analysis applies.

*The district court correctly determined that Helix is not entitled to further payment from APCO under the subcontract*

*The section 3.8 preconditions are valid*

Helix argues the preconditions to obtaining its retention payment under section 3.8 of the APCO-Helix subcontract are void and unenforceable under *Zitting* and its antecedent, *Lehrer McGovern Bovis*, because those preconditions include an invalid pay-if-paid provision and improperly require Helix to waive its rights under NRS 624.624-.630. Consequently, Helix appears to argue, the retention amount became due immediately upon completion of its work and is currently owed by APCO. We review these questions de novo. *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013) (explaining that we review statutory interpretation questions de novo); *May*, 121 Nev. at 672, 119 P.3d at 1257 (explaining that we review contract interpretation questions de novo). We will interpret a clear and unambiguous contract as written. *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015).

In *Lehrer McGovern Bovis*, we addressed pay-if-paid provisions, which predicate a subcontractor's right to payment from a general contractor upon the developer or owner first paying the general contractor. We concluded that pay-if-paid provisions violate public policy and are generally unenforceable. In *Zitting*, we clarified that, consistent with 2001 statutory amendments and NRS 624.628(3), pay-if-paid provisions are not void per se but will be unenforceable if they (1) "require subcontractors to waive or limit rights provided under NRS 624.624-.630"; (2) "relieve general contractors of their obligations or liabilities" under those same statutes; or (3) "require subcontractors to waive their rights to damages." 136 Nev. at 569, 473 P.3d at 1024. As to the third factor, NRS 624.628(3)(c) more specifically provides that a condition is void if it does the following:

> *Requires a lower-tiered subcontractor to waive, release or extinguish a claim or right for damages* or an extension of time that the lower-tiered subcontractor may otherwise possess or acquire as a result of delay, acceleration, disruption or an impact event that is unreasonable under the circumstances, that was not within the contemplation of the parties at the time the agreement was entered into, or *for which the lower-tiered subcontractor is not responsible*, is against public policy and is void and unenforceable.

(Emphases added.)

Pay-if-paid provisions "require a case-by-case analysis to determine whether they are permissible." *Zitting*, 136 Nev. at 574, 473 P.3d at 1027. In *Zitting*, which involved the claims of another subcontractor who worked on the project under a subcontract substantially similar to that at issue here, the district court determined the subcontract's pay-if-paid provisions were void and unenforceable. 136 Nev. at 574-75, 473 P.3d at 1027. On appeal, we agreed, because the subcontract provisions conditioned Zitting's right to payment on the contractor being paid by the owner and thus both violated the subcontractor's right under NRS 624.624(1) to prompt payment for its work and restricted its recourse to a mechanics' lien granted by statute. *Id.*

For the same reasons, the precondition subjecting Helix's right to payment of the retention amount on APCO receiving payment from Gemstone is void. The precondition requires Helix to waive its right to monies earned if APCO does not receive payment, even if Helix meets its obligations, is not at fault for the events that led to nonpayment, and would otherwise have a claim for that retention. *See* NRS 624.628(3)(c). Accordingly, we conclude that this precondition is void.

Helix contends that section 3.8's other preconditions are also void—first, because the pay-if-paid precondition's invalidity voids the whole section, and second because they limit its statutory rights by requiring it to satisfy conditions "entirely outside of its control." But the subcontract included a severability clause, and Helix does not otherwise show why the entire provision fails based on one unenforceable pay-if-paid precondition. Nor does Helix show that, under NRS 624.628(3), the preconditions to the retention payment require it to waive or limit its statutory or contractual rights and thus are invalid as a matter of law. NRS 624.624(2)(b) explicitly permits a contractor to condition payment of the retained funds upon the subcontractor supplying lien releases, and the statute does not preclude the contractor from imposing other completion and acceptance conditions on the payment. Indeed, such terms appear to go to the very purposes of retention—to encourage the subcontractor to complete its work on the project and to reserve funds to cure any default by the subcontractor. *See Pittsburg Unified Sch. Dist.*, 181 Cal. Rptr. 3d at 699 (where a contractor defaults on the construction contract, the owner is entitled to use the retention to complete the contract); *see also* 3 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 8:18, at 39 (2016) ("A common contract approach to reducing a contractee's risk that its contractor will fail to fully perform its contractual obligations is to withhold a percentage of the sums due until the work is substantially complete.").

Helix's additional arguments for not enforcing the preconditions—that events subsequent to beginning work on the project, including the project's ultimate abandonment, rendered the preconditions impossible, futile, and excused—do not go to the general validity of those terms, but rather to the facts of this case. Thus, the district court did not

err by determining that, aside from the pay-if-paid precondition, the subcontract's retention payment preconditions were valid. To the extent Helix argues that APCO, by stopping work on the project or failing to terminate the subcontract, prevented it from completing the preconditions, such that those preconditions should be excused, the district court concluded that Helix's work under the subcontract continued after APCO left the project under assignment to Gemstone/Camco. Helix's arguments as to the assignment findings are discussed next.

*APCO's obligations under the subcontract were assigned*

Helix contends that APCO's obligation to pay Helix for its work on the project, including retention fees, was never assigned or waived and therefore APCO must pay Helix the retention it earned. Specifically, Helix argues that the prime contract allows for assignment only where Gemstone terminates APCO for cause and that, because APCO was the party ultimately found to have validly terminated the prime contract and APCO did not expressly terminate its subcontract with Helix, APCO remained obligated to pay Helix for the work it performed under the subcontract.

"An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) of Contracts § 317 (Am. Law Inst. 1981). "[A]n assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged." *Easton Bus. Opportunities, Inc. v. Town Exec. Suites-E. Marketplace, LLC*, 126 Nev. 119, 125, 230 P.3d 827, 831 (2010) (internal quotation marks omitted). Nevada law favors "the free assignability of rights and frowns on restrictions that would limit or

preclude assignability," and ordinarily a contractual right is assignable unless the assignment will materially change the contract's terms or the contract expressly precludes assignment. *Id.* at 124, 230 P.3d at 830 (internal quotation marks omitted); *see also* Restatement (Second) of Contracts § 317 (Am. Law Inst. 1981) (explaining that where neither the contract nor a statute precludes assignment, a contract right is assignable unless the assignment "would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him").

Absent a contract provision or statute that imposes restrictions on assignments, "there are no prescribed formalities that must be observed to make an effective assignment," so long as the assignor manifests "a present intention to transfer its contract right to the assignee." *Easton*, 126 Nev. at 127, 230 P.3d at 832 (internal quotation marks omitted). Evidence of an assignment may include that the assignee administers the project and ensures it is correctly carried out, the assignee pays the subcontractors, and the assignee answers questions about the project and is physically present at the project. *Cf. J. Christopher Stuhmer, Inc. v. Centaur Sculpture Galleries, Ltd.*, 110 Nev. 270, 274-75, 871 P.2d 327, 330-31 (1994).

Here, section 10.02 of the Gemstone-APCO prime contract provides in pertinent part that, for any enumerated reason, "Developer may . . . terminate employment of General contractor and may . . . accept assignment by any Third-Party Agreements pursuant to section 10.04." In turn, Section 10.04 provides in pertinent part, "Each Third-Party Agreement for a portion of the Work is hereby assigned by General Contractor to Developer provided that such assignment is effective only

after termination of the Agreement by Developer for cause" and upon written notification in writing to the general contractor and the subcontractor. In August, Gemstone notified APCO that it would terminate the agreement for cause and, upon termination, acquire the subcontracts by assignment, and in September, Gemstone sent Helix a letter confirming its intent to continue with Helix's services, to which was attached a ratification agreement incorporating the APCO-Helix subcontract. Although Helix ultimately did not sign the ratification, it negotiated terms, continued to work on the project under Camco, and submitted billing statements to Camco. Thus, even though the district court many years later concluded that APCO, not Gemstone, had validly terminated the contract, it appears that the parties proceeded under section 10.04 as if Gemstone had terminated the prime contract for cause based on the information available to them at the time.

Regardless, even if Gemstone's purported termination did not trigger an assignment under the prime contract, we conclude that the APCO-Helix subcontract was assigned to Gemstone/Camco. Nothing in the prime contract prevented an assignment by other means, and neither that contract nor the subcontract required Helix to approve the assignment. Gemstone manifested an intent to assign the contract obligations to Camco by telling subcontractors their contracts would be assumed by Camco, and Camco thereafter directed the project. Helix worked directly with Gemstone and Camco after APCO left the project, and Helix billed Camco for its payments, including for the retention. Therefore, we conclude the district court did not err in finding APCO's obligations under the subcontract were assigned after APCO left the project and Camco became

SUPREME COURT
OF
NEVADA

(O) 1947A

12

the general contractor.[3] *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (holding that we will affirm the district court if it reaches the correct result, even if for the wrong reason). Accordingly, the district court did not err in concluding that Helix failed to prove that APCO owes it further payment for retention or other amounts.[4]

*The district court did not abuse its discretion in granting APCO attorney fees pursuant to NRCP 68*

Helix argues that APCO's offer of judgment was untimely, rendering NRCP 68 fees unavailable, because it was not made before the start of trial in the consolidated cases in 2012. Helix asserts that, because no written order bifurcated the trial and the district court recognized the start of one overarching "trial" for purposes of NRCP 41(e), failure to serve the offer of judgment before the trial of matters involving parties other than it in 2012 necessarily rendered the offer untimely. While NRCP 68(a) requires parties to serve offers of judgment before trial, we explained in *Allianz Insurance Co. v. Gagnon* that an action may consist of more than

---

[3]As we conclude that the district court properly determined the subcontract was assigned, we reject Helix's argument that section 9.4 of the subcontract, even if it applied here when the subcontract was not terminated for convenience, requires APCO to pay Helix's retention.

[4]Helix's argument that the district court erred in not holding APCO liable for the payments owed Helix because this court, in *Zitting*, already determined that APCO is the "party legally liable" under the mechanics' lien statutes, *see Zitting*, 136 Nev. at 577, 473 P.3d at 1029, is without merit. In *Zitting*, APCO waived many of the defenses at issue here, including the conditions precedent and assignment arguments. *Id.* at 576 & n.6, 473 P.3d at 1028 & n.6.

one trial for NRCP 68 purposes. 109 Nev. 990, 994-95, 860 P.2d 720, 723-24 (1993) ("The offer of judgment is a useful settlement device which should be made available at every possible juncture where the rules allow."). Nothing in that opinion, or in the federal case it relied on, *Cover v. Chicago Eye Shield Co.*, 136 F.2d 374, 375 (7th Cir. 1943), requires an order bifurcating trial or ties the definition of "trial" for offer-of-judgment purposes to NRCP 41(e). *See generally In re Estate of Sarge*, 134 Nev. 866, 870-71, 432 P.3d 718, 722 (2018) ("Consolidated cases retain their separate identities . . . ."). Accordingly, the district court properly concluded that the offer of judgment, made before trial on Helix's claims began in 2018, was timely.

APCO argues on cross-appeal that the district court erred by relying on NRCP 68 to grant APCO its attorney fees incurred following the offer of judgment, instead of relying on section 18.5 of the APCO-Helix subcontract to award APCO its fees for the entirety of the case. Attorney fees are not recoverable absent a statute, rule, or contractual provision. *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006). We review the district court's decision regarding the fees for an abuse of discretion. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014) (reviewing attorney fees for an abuse of discretion).

"Generally an assignor retains only those rights which have not passed to the assignee by the assignment . . . ." 6A C.J.S. *Assignments* § 120 (2016). "[F]ollowing an assignment of a contract the assignee stands in the shoes of the assignor and the assignor retains no rights to enforce the contract at all." *See* 6A C.J.S. *Assignments* § 105 (2016); *see also Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp.*, 864 So. 2d 55, 58 (Fla. Dist. Ct. App. 2003) ("Because an assignment vests in the assignee the right

to enforce the contract, an assignor retains no rights to enforce the contract after it has been assigned."). Because the APCO-Helix subcontract was assigned to Gemstone and Camco, APCO retains no right to enforce section 18.5 of the subcontract, and the district court did not err by declining to award APCO attorney fees under the subcontract. Accordingly, we affirm the attorney fees award.

## CONCLUSION

We clarify that *Zitting* applies to retention fees earned by subcontractors, and we conclude that section 3.8's pay-if-paid precondition is unenforceable under NRS 624.628(3)(c). However, Helix fails to show that the other preconditions in section 3.8 are invalid. We further conclude that the APCO-Helix subcontract was assigned under these facts and that, therefore, APCO was not entitled to attorney fees under section 18.5 of the subcontract but was properly awarded fees pursuant to NRCP 68. Accordingly, we affirm the district court.[5]

_____, J.
Silver

We concur:

_____, C.J.
Parraguirre

_____, J.
Stiglich

_____

[5]As to the parties' remaining arguments, we have considered them and conclude they are either unnecessary to address, given this disposition, or without merit.